# Richmond

## Joseph W. Bennett v. Commonwealth of Virginia.

December 6, 1943.

Record No. 2728.

Present, All the Justices.

8

The opinion states the case.

*Broudy & Broudy*, for the plaintiff in error.

*Abram P. Staples, Attorney General*, for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

The defendant, Joseph W. Bennett, was tried upon a warrant which charged him with a violation of section 4548c, Va. Code 1942, (Michie), the specific charge being that he kept a place "where persons may meet for the purpose of * * * illicit or illegal intercourse." He was found guilty by a jury and his punishment fixed at a fine of $500 and sixty days confinement in jail. The judgment of the court upon this verdict is before us for review.

The defendant was employed by his brother, Cate Bennett, as night manager of a tourist camp known as "Southern Cabins," situated in Norfolk county, within one mile of the corporate limits of the city of Norfolk. The defendant's hours of employment were from seven-thirty o'clock p. m. to three o'clock a. m.

The camp consisted of a large plot of land with rows of cabins, forty in number, arranged around an open areaway that was practically square in shape. The duties of the defendant were to check the registration of guests, assign cabins when available, and to see that section 1607c of the Code of Virginia (Michie) was complied with.

Section 1607c of the Code provides, that each person operating a tourist camp in this State, shall keep a permanent register on which he shall enter, or cause to be entered, the name and address of every person furnished lodging, at or in such tourist camp, and the State of registration of the motor vehicle, if any, being used by the person furnished such lodging, and further provides that any person applying for or furnished lodging at a tourist camp, who registers in a false or fictitious name, shall be guilty of a misdemeanor.

On the morning of October 18, 1942, between the hours of twelve-thirty and one o'clock, while the defendant was the keeper of the camp, members of the police department of the city of Norfolk, assisted by twenty members of the United States Shore Patrol, made a raid upon the camp. Upon entering the occupied cabins, approximately thirty in number, the officers found them occupied by sailors and girls who were either undressed or partially dressed. They found in one cabin two men and one girl in the same bed, all in a state of dishabille. When questioned as to their matrimonial status, they all, with one exception, admitted that they were not married. A search of the premises disclosed there were only three automobiles at the camp at the time of the raid. It is an admitted fact that practically all "the guests" arrived at the camp in taxicabs and, with but one exception, without luggage.

It is common knowledge that the State and Federal government are putting forth every effort to guard the soldiers and sailors of the armed forces from the contraction of venereal diseases. It is also a matter of common knowledge that large sections of Norfolk county, where thousands of soldiers and sailors are gathered, have been declared restricted areas by the naval authorities, in order to further prevent venereal infections. The fact that twenty members of the Naval Shore Patrol assisted the police officers in making the raid, carries a logical inference that they expected sailors to frequent the camp, accompanied by girl companions.

That the "Southern Camp" was a place where persons might meet for the purpose of illicit intercourse is beyond dispute. This conclusion is demonstrated by the dominant fact appearing in the record, that defendant does not claim that the verdict of the jury is not supported by the evidence, nor is there any assignment of error that he was not the "keeper" of the camp at the time of the raid.

It·is a sad commentary upon the avarice and weakness of man that in a time of national crisis, instead of protecting those who are in his country's service, he should engage "in the detestable business of turning the frailties of women and the lust of men into pecuniary profit." *Bunkley* v. *Commonwealth*, 130 Va. 55, 63, 108 S. E. 1.

The defendant challenges the action of the court in pronouncing judgment upon the verdict of the jury on three grounds.

The first assignment of error is that the court erred in granting, on the .motion of the Commonwealth, this instruction:

"The Court instructs the jury that if you believe from the evidence beyond a reasonable doubt that on October 18, 1942, Joseph W. Bennett kept a place where persons may meet for the purpose of illegal or illicit intercourse in this State and within one mile of the City limits of the City of Norfolk, you shall find him guilty and fix his punishment at a fine of not more than $500.00 or imprisonment for not more than twelve months, or both."

The defendant's objection to the instruction is "that the question of defendant's guilty knowledge or criminal intent was completely ignored."

■ There is no merit in this assignment of error. The instruction is in the language of the statute. While it is true that the Commonwealth must prove the defendant's knowledge of illegal practices in the camp of which he was admittedly the "keeper," it is also true that such knowledge may be established, like 'any other fact, by direct or circumstantial evidence.

In *Pope* v. *Commonwealth*, 131 Va. 776, 793, 109 S. E. 429, Judge Saunders said:

"In *Jones* v. *State*, 10 Okl. Cr. 79, 82, 133 Pac. 1134, an instruction was sustained by the appellate court, in which the jury was told that it was not necessary for the State to prove actual knowledge on the part of the accused of the character of his place, or of the inmates, or of those who resorted there, but such facts and circumstances may be shown as will convince a jury beyond a reasonable doubt that the accused was bound to have cognizance, or knowledge, of the inmates of the house, or of those who resorted there for the purposes set out in the information. The principle embodied in this instruction applies to proof of cognizance by the proprietor of indecent and immoral practices in his establishment, when they are recurrent. A proprietor should be diligent to see that his entertainments are not destructive of morality, or infected with indecency. He is not permitted to shut his eyes to occurrences that it is his duty to prevent, and find safety in a claim of ignorance."

The basis of defendant's objection to the instruction is that the words "any place *where persons may meet*" for immoral purposes, is broad enough to include the *possibility* of such illegal conduct in any hotel or tourist home, even though the keeper has no knowledge of same.

A construction of section 4548c of Michie's Code, upon which the instruction is based, does not sustain defendant's contention. When we look to the language of the statute, it is clear that it was the intention of the Legislature to place a ban on any place where persons may meet for such illicit purpose without fear of being molested or interfered with by the keeper thereof.

In cases of this nature the rule of common sense should apply. It is inconceivable that if a number of sailors, accompanied by girl companions without even so much luggage as a suit of pajamas or a night gown, should present themselves at the hotel desk as potential guests, that they would be accepted in any decent hotel.

■ The second assignment of error is directed to the refusal of the court to permit the defendant to testify as to the contents of the register kept in the office of the camp, which allegedly was kept in compliance with the statute and contained the required information as to the registered guests. The holding of the court was based upon the well-recognized rule that the register was the best evidence of the facts sought to be proved. No reason whatever for the non-production of the register was given by defendant. On the contrary, he testified that no effort was made to obtain the register which was in the custody of his brother.

■ The last assignment of error relates to the action of the court in ruling that the raiding officers could testify as to the names given them by the occupants of the cabins.

While it is true that the effect of the evidence was to show that the men and women were unmarried and therefore were guilty of illicit intercourse, the evidence was admissible as a part of the *res gestae*.

There is no merit in this assignment of error.

The judgment complained of will be affirmed.

*Affirmed.*