# Richmond

## AL WARSHAW V. CITY OF NORFOLK.

May 1, 1950.

Record No. 3679.

Present, All the Justices.

The opinion states the case.

*Broudy & Broudy*, for the plaintiff in error.

*Jonathan W. Old, Jr.*, and *John B. James*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Warshaw was convicted of violating section 868 of the City Code of Norfolk. This section reads as follows: "It shall be unlawful for any person in the city to keep, maintain, operate, or reside at any house of assignation, boarding house, apartment, room or other place which is used or to be used for lewdness, assignation, prostitution, or illicit sexual intercourse, and in any prosecution for this offense, the general character and reputation of such place may be proved, and each day's keeping of such place shall constitute a separate offense."

On March 27, 1949, Warshaw took over the operation of the Park Hotel under a lease for a term of one year. The hotel consisted of fifteen rooms numbered consecutively, and was located on the second and third floors of a building at the southwest corner of Main street and Roanoke avenue in Norfolk. The ground floor was occupied by a

restaurant, and a stairway enters on Main street and leads to the second floor. The rooms on the second floor are numbered 1 to 8. Room No. 2 is divided by a partition and the front half is used as an office. In the hall is a desk used for the registration of guests, and another stairway leads from the second floor to the remaining rooms on the third floor.

Warshaw had been engaged for the past four years in the operation of an arcade on east Main street in Norfolk which was patronized largely by sailors, and in taking over the hotel he intended to serve the same class of patrons. The testimony indicates that the hotel is almost exclusively patronized by sailors.

Police officers of the city testified that the hotel had the general reputation of a house of prostitution. This reputation evidence was admissible under the express terms of the ordinance.

A few weeks after the accused began the operation of the hotel police officers testified that on May 16, 1949, acting upon information, they kept the hotel under observation for a short period of time, and during that time they saw sailors enter and leave the hotel. They further testified that they went to the hotel without a warrant and opened the doors to the rooms that were not locked. At the time of the arrival of the officers the accused had been in the hotel about twenty minutes. He was accustomed to spending only à portion of his time at this place. In Room No. 3, an officer pushed open the door and found six sailors, one of whom had retired. Upon being questioned as to what they were doing there one sailor said "we are waiting for a woman". Upon being advised that there would be no woman that night four of the sailors left.

A thorough search was made of the hotel and some of the rooms were locked. The accused insisted that before the locked rooms were entered the officers should present a search warrant. A search warrant was sent for and obtained, and upon service on the accused, he opened the locked

doors. In one room was found a sailor and a girl, both fully dressed. No other woman or girl was found in the hotel. The sailor who was found with the girl stated to the officers in the presence of the accused that he had been taken to that room by a bellboy and was told that it would be "$5 for a date". The officers admitted that this sailor stated that the accused had not participated in the arrangement.

The accused testified in his own behalf and denied any knowledge of the presence of the girl in the hotel. He asserted he had been in the hotel only about 20 minutes before the arrival of the police; that he had not been on the third floor at all where the sailor and the girl were found, and that he required a search warrant because he did not want his guests disturbed.

The accused had never previously been convicted of any offense involving moral turpitude. He said he did not know that the hotel had a bad reputation; that he took over the place for the purpose of catering to sailors who were generally on leave in the city of Norfolk. It is a matter of common knowledge that there are many sailors on leave in Norfolk nearly all of the time, and they must have rooms. It is also a matter of common knowledge that their finances are very limited, and for that reason they are forced to occupy rooms which may be procured at small cost. They certainly do not generally have enough money to stop at the first-class hotels. The accused further testified that he had never made any arrangement for girls to meet sailors or anyone else in his hotel, and that he had no knowledge that any such arrangements were made or had been made.

The city ordinance seems to be somewhat similar to Code, 1950, section 18-87, which latter section was construed in *Bennett* v. *Commonwealth*, 182 Va. 7, 28 S. E. (2d) 13, where we held that the burden was upon the Commonwealth to prove the defendant's knowledge of the illegal practice carried on in such a place.

 Neither the statute nor the ordinance in specific terms provides that one accused of violating either must have knowledge of its illegal use. However, since the case of *Bennett* v. *Commonwealth, supra,* there can be no question about this phase of the case, for we are there on record as having read into the statute that one charged with its violation, before he can be found guilty, must possess knowledge of the illegal practices that are carried on in such place.

The language of the city ordinance is broader than the statute. It provides in part, "It shall be unlawful for any person * * * to keep any house of assignation * * * which is used or to be used for lewdness * * *." The words "which is used or to be used for lewdness" are very broad and might be applied to many reputable hotels or apartment houses. Unless we read into the ordinance and the statute that such use must be with the knowledge of the keeper, persons might be convicted of a violation of the statute or ordinance without ever having known that the hotel, apartment or rooming house was being used or to be used for the purpose of illicit sexual intercourse.

 The evidence in the case at bar is not sufficient to prove beyond all reasonable doubt that Warshaw knew that the Park Hotel was being used or to be used at the time of the raid or at any time in violation of the ordinance. It is quite true that the circumstances create a suspicion, but this alone is not sufficient to sustain a conviction. We fully realize that in cases of this kind it is difficult for the Commonwealth to make out a case, but however this may be, we must recognize the fundamental rights of one accused of crime.

The judgment is reversed and the warrant dismissed.

*Reversed and dismissed.*