## Richmond

ROBERT M. FLANNERY v. CITY OF NORFOLK.

October 10, 1975.

Record No. 750022.

Present, All the Justices.

*Thomas W. Moss, Jr. (Moss & Moss,* on brief), for plaintiff in error.

*Douglas Fredericks, Assistant City Attorney (Philip R. Trapani, City Attorney,* on brief), for defendant in error.

COMPTON, J., delivered the opinion of the court.

The defendant, Robert M. Flannery, was convicted by the circuit court, sitting without a jury, upon a warrant which charged him with "keeping and maintaining a disorderly house", in violation of a Norfolk City Ordinance. He appeals from the judgment of conviction which ordered a fine, a jail term (a portion of which was suspended), and supervised probation.

The central issue on appeal is whether § 31-18 of the Norfolk City Code is unconstitutional on its face. Specifically, the question is whether the ordinance is void for vagueness. It provides that:

"It shall be unlawful for any person in the city to keep, maintain or operate, for himself or as an officer of or agent for any corporation, association, club, lodge or other organization, or under the guise of any corporation, association, club, lodge or other organization, any disorderly house, or place where disorderly persons meet or may meet for the purpose of illegally dispensing or indulging in intoxicating liquors, gaming or boisterous or other disorderly conduct. Each day's keeping of any such place shall constitute a separate offense, and in any prosecution for this offense, the general reputation of such place may be proved.

"It shall be unlawful for any person to frequent, reside in or visit any such place for the purpose of illegally dispensing or indulging in intoxicating liquors, gaming or boisterous or other disorderly conduct.

"Any person violating the first paragraph of this section shall be punished by a fine of not less than twenty-five dollars nor more than five hundred dollars or by confinement in jail not exceeding six months, either or both; and any person violating the second paragraph of this section shall be punished by a fine of not less than five dollars nor more than one hundred dollars."

The evidence, viewed in the light most favorable to the City, establishes that during the period from August 24, 1973, to February 28,

1974, the defendant owned and operated the "Business Man's Massage Parlor," located in Norfolk. The testimony showed that during this period the masseuses, who were employees of the defendant, performed for the male customers various "services" which included acts of masturbation and oral sodomy. The masseuses were virtually nude while engaged in these activities. The evidence also established that the masseuses solicited the clientele for prostitution and sodomy. Furthermore, there was testimony that the massage parlor, which was open to the public, was reputed in the community to be a brothel.

The defendant attacks the constitutionality of the ordinance, claiming that "it is vague and ambiguous and is violative of the due process requirement of definiteness in criminal statutes." He argues there was no evidence that intoxicating liquors were dispensed or used on the premises, nor was there any evidence of gaming or boisterous conduct thereon. He reasons, therefore, that "[e]ffectively, . . . what is left is a conviction for keeping and maintaining a house where disorderly persons meet for the purposes of indulging in disorderly conduct", which he contends does not withstand a constitutional challenge.

The City argues, *inter alia*, that the ordinance "conceptually" contains separate parts, the first pertinent part providing: "It shall be unlawful for any person in the city to keep, maintain or operate, for himself . . . any disorderly house . . . ." It emphasizes that Flannery was charged with a violation of only that part of the ordinance. It takes the position that such part meets constitutional requirements because "keeping a disorderly house" is a common law offense with a constitutional common law definition. We agree and affirm.

Manifestly, an analysis of the ordinance shows that its first sentence is logically divided into distinct and different parts by the disjunctive "or," which follows the phrase "disorderly house." The first part of this sentence proscribes, on the one hand, keeping, maintaining or operating "any disorderly house," while the second part, on the other hand, prohibits keeping, maintaining or operating any "place where disorderly persons meet or may meet for the purpose of illegally dispensing or indulging in intoxicating liquors, gaming or boisterous or other disorderly conduct." The first part is not contingent upon the second nor does the latter qualify the former. A "house" may be "disorderly" without being a "place" where illicit trafficking in alcohol, gambling or noisy activity takes place, as, for example, a house of prostitution or a place open to the public where persons congregate to engage in homosexual conduct.

Accordingly, we conclude that the first part of the ordinance, which prohibits keeping, maintaining or operating a disorderly house, may properly be excised and considered separately from the remainder of the ordinance. Even if we assume that the remainder of the first and second paragraphs is invalid—an issue we do not reach in this case—this severance for the purpose of constitutional analysis is authorized by the saving provisions of Norfolk City Code § 1-3,[1] and the valid portion may stand alone. This is so because the presumption of inseparability is reversed by the foregoing ordinance and, further, because we are of the opinion that it was the intent of the Norfolk City Council to make the keeping, maintaining or operating of a disorderly house a criminal offense, even though it was included in an ordinance which purported to make other acts criminal offenses. *Wicks* v. *City of Charlottesville*, 215 Va. 274, 277, 208 S.E.2d 752, 755 (1974). *See Board of Supervisors* v. *Rowe*, 216 Va. 128, 147-48, 216 S.E.2d 199, 214-15 (1975).

As we turn to the crux of this appeal, it should be remembered, as the City emphasizes, that the defendant was charged in the warrant and tried for "keeping and maintaining a disorderly house." He was *not* charged with maintaining "a place where disorderly persons meet or may meet" either "for the purpose of illegally dispensing or indulging in intoxicating liquors" or for the purpose of "gaming or boisterous or other disorderly conduct." Nor was he charged under the second paragraph of the ordinance. The evidence was entirely sufficient to support a conviction of the charged offense and we reject out of hand the defendant's claim that the evidence was insufficient.

This brings us directly to the constitutional issue. If the offense stated in the excised part of the ordinance is ambiguous, the conviction must be set aside. But if the statement of the offense is not void for vagueness, the conviction must stand.

The United States Supreme Court, in applying the vagueness doctrine to state statutes and city ordinances under the due process requirement of the Fourteenth Amendment, has stated that the doctrine is based on the principle that no person "shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *Colten* v. *Kentucky*, 407 U.S. 104, 110 (1972), *quoting United States* v. *Harriss*, 347 U.S. 612, 617 (1954). "The root of the vagueness doctrine is a rough idea of fairness. It is not a

---

[1]"Sec. 1-3. Separability. If any part or parts, section or subsection, sentence, clause or phrase of this Code is for any reason declared to be unconstitutional or invalid, such decision shall not affect the validity of the remaining portions of this Code."

principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited." 407 U.S. at 110. An ordinance is void for vagueness if it fails to give a reasonably intelligent person fair notice that his contemplated conduct is forbidden by the enactment, and if "it encourages arbitrary and erratic arrests and convictions." *Papachristou* v. *City of Jacksonville*, 405 U.S. 156, 162 (1972). *See Caldwell* v. *Commonwealth*, 198 Va. 454, 458, 94 S.E.2d 537, 539-40 (1956).

In determining whether a legislative enactment is unconstitutionally vague, the Supreme Court has considered whether the words used have a well-settled common-law meaning, *Lanzetta* v. *New Jersey*, 306 U.S. 451, 454-55 (1939); *Connally* v. *General Construction Co.*, 269 U.S. 385, 391 (1926), and whether the state's case law demonstrates that the language used, while otherwise vague, has been judicially narrowed. *Grayned* v. *City of Rockford*, 408 U.S. 104, 111-12 (1972). *See Parker* v. *Levy*, 417 U.S. 733, 752-54 (1974).

We now examine the excised language of the ordinance under consideration in the light of the foregoing established criteria.

The keeping of a disorderly house[2] was a common-law offense, 2 *Wharton's Criminal Law and Procedure* § 764 at 592 (R. Anderson 1957), and the offense was defined as "the maintenance of premises upon which activity occurred that either created a public disturbance or, although concealed from the public, constituted a nuisance *per se*, such as a gambling house or bawdy house." *Harris* v. *United States*, 315 A.2d 569, 572 (D.C. Ct. App. 1974) (footnotes omitted). "The rationale for this common-law rule rested upon the potential in these 'houses' for breach of the peace that is inherently present in numbers of persons frequenting such places for unlawful purposes." *Id.; Wharton, op.cit.*, § 763 at 591.

Guided, therefore, by this settled common-law definition of the crime as applied to the excised portion of the ordinance, a person of ordinary intelligence can readily understand that it is unlawful in Norfolk to maintain a place where persons engage in activity which either creates a public disturbance or, although hidden from public view, constitutes a nuisance, *per se*.[3] By the same token, arbitrary

---

[2]At common law, a disorderly house was a public nuisance. *Pope* v. *Commonwealth*, 131 Va. 776, 793, 109 S.E. 435 (1921).

[3]The term nuisance *per se* is restricted in its use "to such things as are nuisances at all times and under all circumstances." *Price* v. *Travis*, 149 Va. 536, 547, 140 S.E. 644,

action by those persons who must apply the terms of the offense, that is, police officers, prosecutors, judges and jurors, is sufficiently restricted by this well-settled common-law definition. For example, any reasonably intelligent person would know that repeated acts of oral sodomy, and solicitation therefor, performed in a commercial establishement open to the public by undressed females, constitutes a nuisance *per se* and, therefore, permitting such conduct to take place is unlawful under this ordinance. We conclude, therefore, that the excised language of the ordinance, as thus construed, sufficiently defines the offense charged and that it withstands the defendant's constitutional attack. We further hold, as previously stated, that the evidence was fully sufficient to show that the activity conducted on the premises kept by defendant constituted a nuisance *per se*.

■ The defendant, in his broadside attack on the entire ordinance, takes the position that it punishes "disorderly conduct" and "disorderly persons." He argues that the vagueness of these terms invalidates the ordinance. But the defendant has no standing to make such a challenge in this case. As we have demonstrated, he was not charged with either "disorderly conduct" or as a "disorderly person." Even if those portions of the ordinance are invalid, he is not affected because he was convicted of keeping a disorderly house, and he will not be permitted to attack its validity as applied to others who may be prosecuted for disorderly conduct or as disorderly persons. *Wicks* v. *City of Charlottesville, supra,* 215 Va. at 277-78, 208 S.E.2d at 755. *See Parker* v. *Levy, supra,* 417 U.S. at 755.

■ Finally, the defendant contends that the trial court erred in refusing to grant his motions for a mistrial after certain statements, which the defendant alleges were inflammatory, were made by the prosecutor and by a witness for the City. The attorney for the City, during opening statement, said that the case involved "one of the most infamous of the massage parlors" and that it had "a reputation in the community as being a legalized whorehouse." Sergeant C. J. Morgante of the Norfolk Police Department, after testifying that the massage parlor was "a whorehouse, a house of ill repute, [and] an illegal house of prostitution," stated that "[i]t is a filthy place, [it] makes Granby Street filthy, its [——], that is what one said to me." In overruling the motion for a mistrial made after the preceding

647 (1927). By statute in Virginia, whoever maintains any building used for the purpose of "lewdness, assignation or prostitution" is guilty of a nuisance, and the building where such conduct is permitted is declared a nuisance. Code § 48-7.

testimony, the trial judge stated that he was not offended by the vulgarism.

We reject the defendant's contentions, even if we assume that the statements were improper. This was a bench trial and judges are suited by training and experience to disregard potentially prejudicial comments. *See Akers* v. *Commonwealth*, 216 Va. 40, 45, 216 S.E.2d 28, 31 (1975). We find no abuse of discretion in the denial of a mistrial.

For these reasons, the conviction is

*Affirmed.*