# Richmond

## DONNA J. HENSLEY, BARBARA MCCLURE AND ERNEST L. COLE V. CITY OF NORFOLK.

October 10, 1975.

Record No. 750100.

Present, All the Justices.

*Anthony L. Montagna, Jr.,* for plaintiffs in error.

*Douglas Fredericks, Assistant City Attorney (Philip R. Trapani, City Attorney,* on brief), for defendant in error.

COMPTON, J., delivered the opinion of the court.

This is an appeal of the convictions of three defendants, Donna J. Hensley, Barbara McClure and Ernest L. Cole, for violations of several Norfolk City ordinances. The cases, which stem from the activities on June 26, 28 and 29, 1974, at the "Venus I Massage Parlor" in Norfolk, were consolidated for trial and heard by the court sitting without a jury on September 24, 1974.

The main issues on appeal involve the constitutionality of the ordinances upon which the convictions were based, the sufficiency of the evidence, and certain matters of procedure.

Testifying for the City were three Norfolk police officers and two "civilian" undercover agents sent to the massage parlor by the police to obtain evidence. The only defendant who testified was Donna J. Hensley.

The evidence showed that on June 26, 1974, Thomas Swah, an undercover agent, entered the establishment in question, which was open to the public. The defendant Cole was sitting in a "cage-like room" just inside the entrance, and Swah paid Cole $20.00 for a massage. Cole then directed Swah to another room in the building where he met the defendant Hensley, who instructed Swah to disrobe. Swah followed the instructions and Hensley then proceeded to massage his person. She was dressed in "an oversized T-shirt" and "something basically like shorts." During the massage, Hensley masturbated Swah and solicited him for prostitution and oral sodomy.

The evidence further disclosed that on June 28, 1974, about 11:15 p.m., John Kipper, another undercover agent, entered the massage parlor, paid the defendant Cole $20.00, and was directed into a "waiting room." After some time, the defendant Hensley appeared, "led" Kipper to "a cubicle room in the back of the building," and told him to disrobe. Kipper undressed and Hensley then proceeded to massage him. The evidence does not show whether or not she was clothed. While massaging Kipper, Hensley masturbated him and solicited him for prostitution and oral sodomy.

Kipper spent about one hour in the establishment. Shortly after he left, Norfolk Police Officers Morgante, Nebrotskie, and Banks arrived on the scene and arrested the defendants. Morgante then recovered from Cole the money which Kipper had paid, the serial numbers of which had been previously recorded by the officers.

Nebrotskie, after entering the establishment, saw the defendant McClure going from one of the "back stalls" of the massage parlor to another.

Morgante, when asked to state the general reputation of the massage parlor, testified that "seven out of ten would say it was just a house of prostitution. A whorehouse."

### The Case of Barbara McClure

The warrant charged this defendant with "frequenting a disorderly house", in violation of Norfolk City Code § 31-18,[1] and she was convicted of that offense. Our view of her case requires consideration of only one of her assignments of error, viz., that the evi-

---

[1]"Sec. 31-18. Disorderly houses.

"It shall be unlawful for any person in the city to keep, maintain or operate, for himself or as an officer of or agent for any corporation, association, club, lodge or other organization, or under the guise of any corporation, association, club, lodge or other organization, any disorderly house or place where disorderly persons meet or may meet for the purpose of illegally dispensing or indulging in intoxicating liquors, gaming or boisterous or other disorderly conduct. Each day's keeping of any such place shall constitute a separate offense, and in any prosecution for this offense, the general reputation of such place may be proved.

"It shall be unlawful for any person to frequent, reside in or visit any such place for the purpose of illegally dispensing or indulging in intoxicating liquors, gaming or boisterous or other disorderly conduct.

"Any person violating the first paragraph of this section shall be punished by a fine of not less than twenty-five dollars nor more than five hundred dollars or by confinement in jail not exceeding six months, either or both; and any person violating the second paragraph of this section shall be punished by a fine of not less than five dollars nor more than one hundred dollars."

dence was insufficient to support a conviction. We agree with the defendant.

McClure's motion to strike the City's evidence as to her, made at the close of the City's case in chief, should have been sustained by the trial court. The City's evidence shows that she was merely present in the massage parlor and this is not sufficient to support the conviction.

## The Case of Ernest L. Cole

Cole was convicted of "keeping and maintaining a disorderly house" in violation of Norfolk City Code § 31-18, note 1 *supra*. He attacks the constitutionality of the ordinance.

First, he contends that it is unconstitutional on its face because it is vague. We do not agree. We have considered and rejected an identical attack on this very ordinance in *Flannery* v. *City of Norfolk*, 216 Va. 362, 218 S.E.2d 730 (1975), this day decided. *Flannery* controls here; therefore, this portion of the defendant's argument needs no further elaboration.

■ Second, the defendant takes the position that the ordinance is overbroad because it abridges the right under the First and Fourteenth Amendments of peaceable assembly. He contends that the Venus I Massage Parlor "is a legitimate and lawful activity" and "people have a right to assemble there as in any business." This argument is completely frivolous. The limited scope of that part of the ordinance under which Cole was charged places no restriction on the constitutionally protected right of assembly. It merely proscribes keeping and maintaining a house where certain unlawful conduct takes place.

■ We likewise reject Cole's further contention that, even if constitutional, the ordinance has been applied to him in an "unreasonable, arbitrary and capricious manner." He argues that there is "a myriad of other ordinance provisions and state statutes that could be employed to charge individuals who have committed offenses growing out of the operation of a massage parlor." As we perceive his contention, it is that other charges, such as keeping a bawdyhouse,[2] more properly fit this crime.

Even if we assume Cole is correct that there is a "myriad" of other statutes and ordinances under which he could be properly prosecuted,

---

[2]Norfolk City Code § 31-54 makes it unlawful for any person in the City to keep, maintain or operate any bawdyhouse or other place which is used for prostitution or illicit sexual intercourse.

this argument is without merit. A prosecutor has the discretion to decide under which of several applicable statutes the charges shall be instituted. *People* v. *Thrine*, 218 Mich. 687, 690-91, 188 N.W. 405, 406 (1922). *See Myers* v. *District Court*, 184 Colo. 81, 518 P.2d 836, 838 (1974).

█ Cole next contends that the evidence was insufficient to convict him. We disagree. As the City maintains, under § 31-18, note 1 *supra*, there are four elements to the offense of keeping and maintaining a disorderly house. The defendant must keep, maintain, or operate it for himself or another; it must be in fact a disorderly house; the activities must be continuing in nature, *Foster* v. *Commonwealth*, 179 Va. 96, 100, 18 S.E.2d 314, 316 (1942); and the defendant must have had knowledge of the illegal practices carried on in the establishment. *Warshaw* v. *City of Norfolk*, 190 Va. 862, 866, 58 S.E.2d 884, 885-86 (1950); *Bennett* v. *Commonwealth*, 182 Va. 7, 11-12, 28 S.E.2d 13, 14 (1943).

In this case, the foregoing elements were proved beyond a reasonable doubt. First, Cole was obviously operating the place for himself or another. He was stationed inside the entrance; he received money from the customers; and he directed them to the location in the building where they could be "served." Second, the evidence of masturbation and solicitation qualifies the massage parlor as a nuisance *per se* and hence a "disorderly house." *Flannery* v. *City of Norfolk, supra*, 216 Va. at 366-67, 218 S.E.2d at 734. Third, the evidence shows the unlawful activities were continuing in nature, that is, they took place during portions of at least three separate days. Finally, Cole's knowledge of the illegal occurrences is apparent. He was present and in charge of an establishment, where unlawful acts were taking place and which had the general reputation of being a brothel. He will not be heard to argue that he was ignorant of what was going on around him.

### The Case of Donna J. Hensley

This defendant was convicted under warrants charging her with: "frequenting a house of ill fame" on June 26, 1974, in violation of Norfolk City Code § 31-55;[3] "soliciting" on June 26, 1974, in viola-

---

[3] "Sec. 31-55. . . .—Frequenting or residing in house of ill fame, etc.

"It shall be unlawful for any person in the city to frequent, reside in or visit for immoral purposes any house of ill fame, brothel or bawdyhouse, apartment, room or other place, within or without any building or structure, which is used or is to be used for lewdness, assignation, prostitution or illicit sexual intercourse. Any person convicted thereof shall be fined not less than ten dollars nor more than one hundred

tion of Norfolk City Code § 31-56;[4] "immoral conduct" on June 28, 1974, in violation of § 31-55; and "soliciting for immoral purposes" on June 28, 1974, in violation of § 31-56.

She contends, first, that one of the warrants issued for the June 28 offenses was invalid because the evidence shows it was issued before the offense was committed. We do not agree. While there are certain inconsistencies in the testimony of the witness Kipper and the police officers concerning the time and manner of the issuance of the warrant, the factual finding of the trial court that it was issued after the offense had been committed is fully supported by the evidence, and we will not disturb that finding.

She contends, next, that the foregoing ordinances are void because they are vague. She argues that the words "immoral" and "lewdness," in § 31-55, are "so devoid of meaning that men of common intelligence could not agree on their meaning." She makes the same complaint of the words "lewd, lascivious, indecent or prostitute" in § 31-56. We reject these arguments.

Section 31-55 meets the test of constitutional certainty we have this day enunciated in *Flannery, supra.* The terms of the ordinance give a reasonably intelligent person fair notice of the conduct which is prohibited. Moreover, the enactment does not encourage arbitrary action by those who enforce and administer it. We construe the general word "immoral," which modifies "purposes" in the phrase "immoral purposes", to be restricted and limited by the specific words "lewdness, assignation, prostitution" and "illicit sexual intercourse", according to the maxim of statutory construction *noscitur a sociis.*[5] Construed in that manner, it is unlawful under § 31-55 to frequent, reside in, or visit *for the purpose of* lewdness, assignation, prostitution or illicit sexual intercourse any of the places

dollars or confined in jail not exceeding six months, either or both." (Footnote omitted).

[4]"Sec. 31-56. . . .—Soliciting.

"Any person who shall, within the limits of the city, solicit another, by word, sign or gesture, to commit any act which is lewd, lascivious, indecent or prostitute shall, upon conviction thereof, be fined not less than twenty dollars nor more than two hundred dollars or confined in jail not more than six months, or both."

[5]The maxim of *noscitur a sociis* (associated words) means that "[i]f the legislative intent or general meaning of a statute is not clear, the meaning of doubtful words may be determined by reference to their association with other associated words and phrases. Thus, when two or more words are grouped together, and ordinarily have a similar meaning, but are not equally comprehensive, the general word will be limited and qualified by the special word." 2A *Sutherland Statutory Construction* § 47.16 at 101 (4th ed. C. Sands 1973) (footnotes omitted).

designated in the ordinance, when that place is used for any of the stated purposes.

Thus narrowed the ordinance is not vague because the terms lewdness, assignation, prostitution and illicit sexual intercourse have clear and specific meanings. "Lewdness" is a common law offense and is defined as "[g]ross and wanton indecency in sexual relations . . . so notorious as to tend to corrupt community's morals." Black's Law Dictionary 1052 (Rev. 4th ed. 1968). "Assignation" means "an appointment of time and place for a meeting esp. for illicit sexual relations . . . ." Webster's Third New International Dictionary 132. "Prostitution" is defined by statute. *See* Code § 18.2-346. The term "illicit sexual intercourse" is self-defining.

In examining § 31-56, we follow the procedure which was used in *Flannery* and, for the same reasons, we sever from the ordinance that portion making it unlawful for any person to "solicit another, by word, sign or gesture, to commit any act which is . . . prostitute . . . ." Such part may properly stand alone for the purpose of constitutional analysis. We hold, therefore, that the separated portion sufficiently states the offense of solicitation for prostitution, one of the crimes with which the defendant was charged, and that it is not vague. *Flannery v. City of Norfolk, supra,* 216 Va. at 365-66, 218 S.E.2d at 732-33.

Finally, defendant Hensley contends that the evidence was insufficient to convict her on each of the four charges. We disagree. The testimony of Swah and Kipper was clear and explicit, and was sufficient to support the finding that this defendant was guilty as charged in all four warrants.

## Matters of Procedure

Hensley and Cole contend that the trial court erred when it allowed Officer Morgante to remain in the courtroom during the trial, the court having granted the defendants' motion to exclude the witnesses. Morgante testified that he was the "supervising officer in charge" of the investigations of these cases. Under these circumstances, we find no abuse of discretion, and therefore no error, in this action of the trial court. *Jefferson v. Commonwealth,* 212 Va. 255, 256, 183 S.E.2d 734, 734-35 (1971). *See Yorke v. Commonwealth,* 212 Va. 776, 777, 188 S.E.2d 77, 77-78 (1972).[6]

---

[6] It should be noted that the 1975 General Assembly amended Code § 8-211.1, Acts 1975, c. 652, and repealed Code § 19.1-246, Acts 1975, c. 495, at 847, dealing with the exclusion of witnesses in criminal cases, which were in effect when *Jefferson* and *Yorke* were decided.

■ Defendants Hensley and Cole claim that the ordinances, the basis of these prosecutions, were improperly received in evidence. The controversy arose in the following manner.

After the last witness for the prosecution had completed his testimony, the City Attorney stated: "Your Honor, at this time, the City would introduce into evidence [the three ordinances]. The City, Your Honor, would rest. I have up in the office certified copies for the record if the Court needs them." After the trial judge ruled that "certified copies" of the ordinances were required, he asked the prosecutor, "so are you resting or aren't you resting?" Counsel then asked for a "short recess." The court declared a recess for lunch, after which certified copies of the ordinances were received in evidence over defendants' objections.

These copies were machine copies of pages of the Norfolk City Code. The certificate for each was signed by a deputy city clerk and each page was impressed with the seal of the City. The certification of § 31-18 was dated June 17, 1974. The certification of the other two ordinances carried the date of the trial. Each certification read: "I certify this is a true excerpt from the Code of the City of Norfolk, Virginia, 1958 as amended."

Hensley and Cole contend that the trial court abused its discretion when it allowed the City to "reopen" its case in chief to introduce the ordinances. This position is without merit. The City had not rested its case prior to the luncheon recess. It is obvious that the trial judge was not of the opinion that the City had rested because he inquired "are you resting or aren't you resting?" In response to this question, the prosecutor made a motion for a recess, which was granted.

These defendants also argue that since one certification was dated before the occurrence of the offenses charged and the others were dated subsequent to the commission of the offenses, there is no proof that the ordinances were in full force and effect when the crimes were committed. We disagree.

Code § 8-270, dealing with this subject, provides, in pertinent part, that "[a] copy of any ordinance . . . of a municipal corporation . . . , certified by the clerk . . . , or a printed copy thereof which purports to have been printed by authority of the corporation . . . , *shall* be received as *prima facie* evidence for any purpose for which the original ordinance . . . could be received." (Emphasis added). We hold that these exhibits met the statutory requirements as to form, and

were properly received in evidence. A *prima facie* showing was thereby made that the ordinances were in effect on the dates of the offenses. The burden of going forward with the evidence to show that the enactments were not effective on the pertinent dates then shifted to the respective defendants, and no such evidence was offered in these cases.

Accordingly, there was no error in the admission of the exhibits.

For the reasons set forth herein we affirm the convictions of Donna J. Hensley and Ernest L. Cole, but we reverse the conviction of Barbara McClure and dismiss the proceeding as to her.

*Affirmed in part;*
*reversed in part;*
*and final judgment.*