## Richmond

KENNETH M. PEDERSEN, JR.

v.

CITY OF RICHMOND

April 20, 1979.

Record No. 780831.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Poff, and Compton, JJ.

*Stephen W. Bricker (Victor M. Glasburg; Hirschkop & Grad* on brief), for appellant.

*Stacy F. Garrett, III, Deputy Commonwealth's Attorney (Aubrey M. Davis, Jr., Commonwealth's Attorney,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

Arrested on a warrant charging him with violation of an ordinance, Section 22-34.1 of the Code of the City of Richmond,[1] Kenneth M. Pedersen, Jr., was tried in the General District Court, found guilty as charged, and sentenced to pay a fine and serve 30 days in jail, the jail sentence being suspended. Appealing his conviction, Pedersen moved to dismiss the charge on the ground that the ordinance was unconstitutional. The trial court, sitting without a jury, overruled the motion, heard the City's evidence, and overruled Pedersen's motion to strike the evidence. Pedersen introduced no evidence in his own behalf. The trial court found him guilty as charged, and sentenced him to pay a fine of $50. In the present appeal, Pedersen again challenges the constitutionality of the ordinance and the sufficiency of the evidence against him.

The only witness who testified in the trial court was Patrolman Kenneth L. Palmer, of the Richmond Bureau of Police, whose testimony, in accordance with familiar principles, will be taken in the light most favorable to the City.

On the night of January 4, 1978, Palmer was working in plainclothes as part of a Selective Enforcement Unit in the downtown Richmond block bounded by Main, First, Franklin, and Foushee Streets, "a known area for homosexuals". The officer was standing on the sidewalk on Foushee Street at approximately 11:35 p.m. when Pedersen drove up and stopped his car at the curb. Palmer related the events that transpired.

> "He rolled his window down and asked me if I would like to have a seat in his car because it was cold outside, and I had a seat in his automobile, at which time he started to drive off. I asked him where he was going and he stated he was just riding.
>
> "He stated that he had picked me up because — that I looked nice in my blue jeans and that he would like to see me naked. He drove over across Belvidere Street and went

---

[1]The ordinance reads as follows:

**Sec. 22-34.1. Solicitations — for Prostitution, etc.**

It shall be unlawful for any person, within the limits of the city, to solicit another by word, sign or gesture, to commit any act which is lewd, lascivious, or indecent, or to solicit for the purpose of prostitution. Any person, upon conviction thereof, shall be guilty of a Class 2 misdemeanor.

down Holly Street to — south on Holly to the dead end and took a right, I believe it's Riverside Park — Drive, if I'm not mistaken.

"He pulled down to the dead end of the street and cut the car off and he was asking me what type of things did I like and I just repeated the question back to him. I'd say, you know, different type of things, all types of things, nothing specifically.

"I asked him and he stated that he liked, you know, different experiences and he would, you know, do almost anything and he said he would like to have sex.

"He had also — had stated and told me about his roommate, which is another male companion, and he told me that he had had sex with him several times.

"I asked him if that's what he wanted me to do, to see me naked and to have sex with me and he stated yes, at which time I placed the defendant under arrest for solicitation and he was advised of his rights."

Palmer estimated that he was in the car for approximately 30 minutes before arresting Pedersen at 12:05 a.m. on January 5.

We first consider Pedersen's arguments that the ordinance is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment and unconstitutionally overbroad in violation of the First Amendment. Contrary to the City's contention, we did not resolve these constitutional questions in *Hensley* v. *City of Norfolk*, 216 Va. 369, 218 S.E.2d 735 (1975). The Norfolk ordinance, similar in language to the Richmond ordinance under consideration, made it unlawful for any person to "solicit another, by word, sign or gesture, to commit any act which is lewd, lascivious, indecent or prostitute . . . ." Finding it unnecessary to analyze all the language of the Norfolk ordinance, we held that the words prohibiting solicitation of another "to commit any act which is . . . prostitute . . . " sufficiently stated the offense of solicitation for prostitution, and was not unconstitutionally vague. We expressed no opinion as to the constitutionality of the ordinance insofar as it

prohibited solicitation to commit any act that is "lewd", "lascivious", or "indecent", but not "prostitute".

We agree with Pedersen that the Richmond ordinance must be narrowly construed to proscribe the solicitation of only those acts which, if consummated, would constitute criminal offenses. If a statute can be made constitutionally definite by a reasonable construction, the court is under a duty to give it that construction. *United States v. Harriss,* 347 U.S. 612, 618 (1954); *Thomes v. Commonwealth,* 355 Mass. 203, 207, 243 N.E.2d 821, 824 (1969). It would be illogical and untenable to make solicitation of a non-criminal act a criminal offense. We will follow the common law principle that the acts encompassed by the solicitation ordinance must be criminal in nature. *See District of Columbia v. Garcia,* 335 A.2d 217, 221 (D.C.), *cert. denied,* 423 U.S. 894 (1975); *Riley v. United States,* 298 A.2d 228, 230-31 (D.C.), *cert. denied,* 414 U.S. 840 (1973); *Cherry v. State,* 18 Md. App. 252, 306 A.2d 634 (1973).

Pedersen concedes that this restrictive interpretation will defeat his due process attack on the constitutionality of the ordinance to the extent that the definition and scope of the crimes solicited are specific and constitutional. The ordinance is concerned with the solicitation of sexual acts which are crimes, and, in respect to Pedersen, since prostitution is not involved, solicitation of a crime that is "lewd, lascivious, or indecent ...." These words have meanings that are generally understood. We have defined "lascivious" to mean "a state of mind that is eager for sexual indulgence, desirous of inciting to lust or of inciting sexual desire and appetite". *McKeon v. Commonwealth,* 211 Va. 24, 27, 175 S.E.2d 282, 284 (1970). "Lewd" is a synonym of "lascivious" and "indecent". Webster's Third New International Dictionary, 1301 (1969). As used in the ordinance, the terms refer to sexual conduct that is contrary to community standards of morality. *See Everett and Wright v. Commonwealth,* 214 Va. 325, 327, 200 S.E.2d 564, 566 (1973). An act of sodomy, made unlawful by Code § 18.2-361,[2] is one within the purview of the ordinance.

An ordinance is void for vagueness if it fails to give a reasonably intelligent person fair notice that his contemplated

---

[2]Code § 18.2-361 provides in pertinent part:

If any person shall ... carnally know any male or female person by the anus or by or with the mouth, or voluntarily submit to such carnal knowledge, he or she shall be guilty of a Class 6 felony.

conduct is forbidden. *Flannery* v. *City of Norfolk,* 216 Va. 362, 366, 218 S.E.2d 730, 733 (1975), *appeal dismissed,* 424 U.S. 936 (1976). A person of even limited intelligence is on notice from the provisions of Sec. 22-34.1 that solicitation of sodomy is thereby forbidden. The vagueness argument, therefore, fails.

Pedersen says that the ordinance is overbroad because it restricts constitutionally protected speech. He also states that it unconstitutionally intrudes upon familial rights of privacy because it sweeps so broadly as to include requests made for abnormal sexual activities by one spouse to another in the privacy of their home. We reject both contentions.

First Amendment protection is not afforded statements made in the solicitation of criminal acts. *Riley* v. *United States, supra,* 298 A.2d at 233. Laws prohibiting solicitation are not directed against words but against acts. A solicitation is, in itself, an act. It is an incitement to unlawful activity which goes beyond the permissible limits of the right of free expression. The social purposes underlying the First Amendment do not extend the protection of that amendment to verbal acts soliciting crimes. *Cherry* v. *States, supra,* 18 Md. App. at 261, 306 A.2d at 639. *See* Annot., 77 A.L.R.3d 519 (1977).

Furthermore, Pedersen lacks standing to assert the privacy rights of third parties. The Supreme Court has permitted one party to assert the rights of another when the challenged law has a "chilling effect" on constitutionally preferred liberties. *E.g., Dombrowski* v. *Pfister,* 380 U.S. 479 (1965); *Thornhill* v. *Alabama,* 310 U.S. 88 (1940). However, we are aware of no decision which permits one party to assert another's privacy rights, which are protected by various constitutional amendments, when the party challenging the law is not in the category of persons whose privacy rights are affected. *See Lovisi* v. *Slayton,* 363 F. Supp. 620, 627-29 (E.D. Va. 1973), *aff'd,* 539 F.2d 349 (4th Cir.), *cert. denied,* 429 U.S. 977 (1976); *Harris* v. *United States,* 315 A.2d 569, 575 (D.C. 1974).

Under our construction of the ordinance, the warrant of arrest charged Pedersen with the offense of solicitation of sodomy. As so construed, the ordinance is neither unconstitutionally vague nor overbroad. *See District of Columbia* v. *Garcia, supra,* 335 A.2d at 222-23.

The question remains whether the evidence is sufficient to support Pedersen's conviction. We reject his argument that, as he

was charged with having violated the ordinance on January 5, 1978, only evidence as to what occurred on that date during the five minutes prior to his arrest at 12:05 a.m. may be considered. Solicitation may comprise a course of conduct, intended to induce another to act, that continues over an extended period. All the evidence bearing upon Pedersen's intent is relevant to a determination of his guilt or innocence. Time is not the essence of the offense charged against him, and any defect or imperfection in the arrest warrant as to date or time is inconsequential. Code § 19.2-226.

The evidence shows that Palmer was standing alone on Foushee Street late at night when Pedersen stopped his automobile, rolled down the window, and invited the officer to sit in the car because of the cold weather. No sooner had Palmer sat down than Pedersen drove off, engaging his passenger in conversation as they rode along various streets. Within a minute or two after Palmer entered the car, Pedersen gave a new and more significant explanation for his invitation. He had picked up Palmer, not to offer him shelter from the cold, but because Palmer looked nice in his clothes and Pedersen would like to see him naked. After Pedersen parked his car at the dead end of a street and cut off the engine, he volunteered the information that he enjoyed different experiences, would do almost anything, and would like to "have sex". He mentioned having had sex with his male roommate several times, said that he wanted to have sex by mutual agreement, and asked Palmer what he wanted or what he had in mind. At one point during their conversation, Pedersen asked whether Palmer was a member of the Vice Squad; the officer replied truthfully that he was not. Finally, Palmer summarized Pedersen's direct statements, indirect suggestions, and salacious innuendoes by asking Pedersen if what he wanted was to see Palmer get naked and have sex with him. Pedersen replied, "Yes".

We believe that it is a reasonable inference from Pedersen's actions and words that he solicited Palmer to commit an act of sodomy in violation of Code § 18.2-361, that the solicitation began with Pedersen's invitation to Palmer to enter the car, that it continued throughout the time the officer remained in the vehicle, and that it culminated in Pedersen's response to Palmer's direct inquiry. It is true, as Pedersen says, that no overt attempt to commit sodomy occurred; the relationship between Pedersen and Palmer never got beyond the discussion stage. But the separate

crime of solicitation may be completed before an attempt is made to commit the solicited crime.

 Pedersen also argues that the evidence fails to show that he solicited Palmer for a criminal rather than a non-criminal act. He suggests that the evidence is susceptible of the reasonable inference that the officer was solicited for one of such non-criminal forms of deviant sexual behavior between two males as kissing, fondling, or what his counsel on oral argument referred to as "partner masturbating". We agree that it could reasonably be inferred that Pedersen, who was ready to try almost anything, had one or more acts of non-criminal sexual perversion in mind. However, the evidence that he wanted to see Palmer unclothed and desired to have sex with him showed beyond a reasonable doubt that, regardless of what other incidental sexual activities Pedersen may have hoped to experience with Palmer, Pedersen's principal objective was to persuade Palmer to engage in an act of sodomy as defined in Code § 18.2-361. We hold, therefore, that the evidence was sufficient to support Pedersen's conviction.

*Affirmed.*