IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0939-05






CAROLYN MACHALEC BARNES, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE THIRD COURT OF APPEALS


WILLIAMSON COUNTY





 Keller, P.J., delivered the opinion of the Court in which PRICE,
WOMACK, JOHNSON, KEASLER, HERVEY, HOLCOMB and COCHRAN, JJ.,
joined. MEYERS, J., filed a dissenting opinion.



 Today we address whether various acts committed during a traffic stop are sufficient to show
interference with a peace officer's public duties. We find that they are, and reverse the judgment of
the Court of Appeals.

I. BACKGROUND


A. Facts


 On March 6, 2002, Department of Public Safety Trooper Mark Koenig stopped appellant's
pickup truck for traveling 65 m.p.h. in a 55 m.p.h. zone. The truck was occupied by appellant and
her seven-year-old son. Koenig parked his patrol car behind the truck, and because the highway was
a high-speed zone, approached appellant's vehicle on the passenger side. He opened the passenger
door to speak to appellant. He testified that he opened the door because of the noise of the truck's
diesel engine and because it appeared that the driver had signaled for him to open the door because
she could not reach it. However, opening the door angered appellant, who began to berate the officer
about the stop and his conduct. (1) Koenig closed the truck's door and continued to speak to appellant
through the open passenger window. He told appellant he was going to write her a citation and told
her to stay where she was. He then returned to his patrol car to verify appellant's identity and to run
a check of her criminal history and driving record.

 As Koenig sat in his patrol car, appellant's truck began to move slowly forward. (At some
point, appellant had also rolled up her windows.) Koenig interrupted his conversation with the
dispatcher and exited his vehicle to approach the truck. He repeatedly warned appellant to stop and
to put the vehicle's gearshift into park, but the truck continued to move slowly some distance before
coming to a complete halt. Koenig estimated that the total distance traveled was 70 feet. After
appellant's initial refusal to stop, Koenig added to his two previous commands a command to exit
the vehicle. But while appellant belatedly complied with the command to stop, she ignored his other
commands, refusing to put the gearshift into park and refusing to leave the truck. Koenig then
moved his patrol car forward to bring it closer to the truck and called for assistance. Deputy Ralph
Fisher came to his aid, pulling his vehicle in front of appellant's truck to prevent forward movement. 
Koenig then moved his car directly behind appellant's truck to box her in.

 Koenig approached appellant's vehicle again and repeated requests for her cooperation. 
Several times he asked her to roll down her windows or to get out of the truck, but she ignored these
requests. More than once, he also told her, "Don't make this difficult. This is a speeding ticket." 
Later, Koenig asked if appellant would at least crack the window so that they could more easily
engage in conversation, as he was having difficulty hearing her through the closed window. At some
point, appellant began reading a book. 

 About ten minutes into the incident, appellant began searching in her purse and under her
seat. Koenig, fearing that appellant was reaching for a weapon, drew his service weapon, pointed it
at appellant, and ordered her to show her hands. From time to time, appellant would withdraw her
hands from view to reach for something, prompting Koenig to repeatedly request that appellant keep
her hands in view. 

 Approximately forty minutes after the stop, and after consulting by phone with a superior
officer, Koenig advised appellant that she was under arrest for evading arrest and refusing to accept
the speeding citation. He requested that she peacefully step out of the vehicle and explained that if
she did not, he would have to break the window and forcibly remove her. He then said, "Please do
not force us to do that." He also told her that, if she was forcibly removed from the vehicle, her child
would be placed in the custody of Child Protective Services. When she did not respond, he repeated
pleas for her to put the vehicle into park and to step out. After appellant ignored these latest pleas,
Koenig broke a window in appellant's truck and opened the doors. Koenig restrained appellant while
Fisher attempted to restrain appellant's son. Appellant shouted for the boy to run and shouted,
apparently to anyone passing by or looking on, "They will kill him." The boy first turned as if to run
onto the highway and then ran to a nearby gas station where he was stopped by a civilian.

 The entire incident was videotaped by a camera in Koenig's patrol car. The tape, with some
edits made in response to appellant's objections, was shown to the jury. We have viewed the edited
version of the tape.

 As a result of this incident, appellant was charged with the offense of "Interference With
Public Duties," a Class B misdemeanor. (2) The information under which appellant was tried charged
that she did

. . . with criminal negligence interrupt, disrupt, impede, and otherwise interfere with
the said M. Koenig by driving her vehicle forward while the said defendant was
lawfully detained; and by directing her minor child to leave her vehicle and run in an
area near traffic; and by continuously refusing to obey orders regarding officer safety,
while M. Koenig, a peace officer, was performing a duty or exercising authority
imposed or granted by law, to wit: to preserve the peace within the officer's
jurisdiction.


Appellant was convicted and sentenced to thirty days in jail and a $1000 fine, but imposition of
sentence was suspended, and she was placed on probation. 

B. Court of Appeals


 Appellant contended on appeal that the evidence was legally insufficient to support her
conviction. The Court of Appeals agreed, reversing the conviction and rendering a judgment of
acquittal. (3) In support of its holding, the Court of Appeals first articulated a general rationale that
applied to the offense as a whole and then articulated specific responses aimed at the State's theories
of liability. The appellate court's position, generally speaking, was that lack of cooperation is
already penalized under the Transportation Code:

Appellant's prosecution rests on her lack of cooperation with Officer Koenig as he
attempted to cite her for speeding. Although traffic law violations ordinarily result
only in a written citation, a violator is subject to warrantless custodial arrest if she
refuses to make a written promise to appear.


* * *



Thus, under the transportation code, the consequence for a driver who refuses to
accept citation is immediate custodial arrest for the traffic offense. We do not believe
that a traffic law violator who directly or indirectly refuses citation may also be
prosecuted under section 38.15 on the theory that the refusal disrupts, impedes, or
otherwise interferes with the officer's performance of his official duties. The
transportation code authority to arrest for a traffic offense would be unnecessary if
an officer could arrest a traffic offender for violating section 38.15 under these
circumstances. (4)


 With regard to the charge that appellant moved her vehicle, the Court of Appeals stated that
appellant "had already been detained when she moved her truck forward, and that status was not
affected by this conduct." (5) The appellate court further held that the conduct did not interfere with
appellant's arrest because the officer was not attempting to arrest her at the time she moved forward. (6)

The Court of Appeals further observed that the "disobeying safety orders" charge was based solely
upon appellant's conduct of rummaging through her purse and under her seat after being told
repeatedly to keep her hands in view. (7) As with the vehicle-movement allegation, the court held that
this conduct did not interfere with the detention because appellant was already detained, and that
status did not change. (8) Finally, the Court of Appeals held that appellant's shout to her child to run
constituted "speech only," a statutory defense to prosecution. (9)

II. ANALYSIS


 

 Section 38.15 provides in relevant part that a person commits an offense if the person:

 with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with
a peace officer while the peace officer is performing a duty or exercising authority
imposed or granted by law. (10) 


It is a defense to prosecution if: "the interruption, disruption, impediment, or interference alleged
consisted of speech only." (11) 

 The Court of Appeals correctly points out that the Transportation Code authorizes arrest for
the offense of speeding if the violator refuses to make a written promise to appear in court. (12) But
appellant did not simply refuse to sign a citation. In fact, Officer Koenig never presented her with
a citation. Each of the three acts she was charged with - moving her vehicle forward, disregarding
officer safety commands by removing her hands from view, and shouting to her child to "run" - 
consists of more than simply refusing to make a written promise to appear, and it is for those acts
that she was prosecuted. 

 We must also disagree with the appellate court's analysis regarding appellant's moving her
truck forward and disobeying safety commands. The court of appeals said that since appellant had
already been detained, these acts did not interfere with her detention. But the charging instrument
did not allege merely that appellant interfered with the detention. The information alleged that the
acts interfered with the officer's duty to preserve peace within his jurisdiction. So, whether or not
appellant's acts interfered with the detention, her acts interfered with his duties during the more-than-forty-minute encounter. Her act of moving forward forced Koenig to interrupt his conversation
with the dispatcher and disrupted his plan to present a speeding citation. Her refusal to stop when
first ordered to do so also forced Koenig to call another officer to assist him - further impeding his
attempt to efficiently and speedily serve her with a citation. Her failure to keep her hands in the open
also served to distract Koenig's attention, thereby prolonging the stop.

 Moreover, the Court of Appeals is mistaken in saying that these acts did not interfere with
the detention itself. Movement of the vehicle in the face of the officer's command to desist was 
itself an act inconsistent with the officer's exercise of authority to detain her. And in fact, this
movement raised the possibility of flight - requiring Koenig to take additional measures to ensure
that detention would not be successfully evaded. Failing to keep her hands in the open after being
instructed to do so was also an act in defiance of the detention itself, which reasonably includes
ensuring the safety of the officer performing the detention. 

 Finally, we disagree with the court's conclusion that appellant's shout to her son to "run" was
"speech only." Appellant's shout to her seven-year-old son was a command to act. In the First
Amendment context, from which the "speech only" defense was apparently derived, words that are
specifically designed to prompt an associate to action are not simply speech, but are conduct that
may be treated accordingly. (13)

 The Court of Appeals erred in holding the evidence to be insufficient to support the
conviction. (14) The judgment of the Court of Appeals is reversed, and the case is remanded to that
court to address appellant's remaining points of error.

 Keller, P.J.

Date delivered: April 26, 2006

Publish

 
1. It was later determined that appellant was an attorney. She subsequently represented
herself at trial.
2. See Tex. Pen. Code §38.15.
3. Barnes v. State, 166 S.W.3d 416 (Tex. App.-Austin 2005).
4. Id. at 419-420.
5. Id. at 420.
6. Id.
7. Id.
8. Id.
9. Id.; see §38.15(d)("speech only" defense).
10. §38.15(a)(1).
11. §38.15(d).
12. Tex. Transp. Code §§543.001 (arrest authorized for violations of provisions of this
subtitle), 543.004 (officer must issue written notice to appear for speeding offense if violator
makes a written promise to appear in court under 543.005), 543.005 (to secure release, violator
"must make a written promise to appear in court by signing the written notice prepared by the
arresting officer"). 
13. Schenk v. United States, 249 U.S. 47, 52 (1919)(First Amendment does "not protect a
man from an injunction against uttering words that may have all the effect of force," citing 
Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 439 (1911)); Gompers ("agreement to act in
concert when the signal is published . . . gives the words . . . a force not inhering in the words
themselves . . . . Under such circumstances they become what have been called 'verbal acts,' and
as much subject to injunction as the use of any other force"); Pederson v. City of Richmond, 219
Va. 1061, 1066, 254 S.E.2d 95, 98-99 (1979)("Laws prohibiting solicitation are not directed
against words but against acts. A solicitation is, in itself, an act. It is an incitement to unlawful
activity which goes beyond the permissible limits of the right of free expression. The social
purposes underlying the First Amendment do not extend the protection of that amendment to
verbal acts soliciting crimes."); Cherry v. State, 18 Md. App. 252, 260-264, 306 A.2d 634, 639-641 (1973)(even the most fervent champions of free speech recognized that the First Amendment
did not extend to verbal acts soliciting criminal conduct). See also Tex. Pen. Code §7.02
(criminal responsibility for conduct of another).
14. While we have addressed all three of the State's theories of liability, we note that each
theory independently supports the conviction.