COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Coleman and Bray
Argued at Richmond, Virginia


SALAHUNDIN DAVID WEBB
                                              OPINION BY
v.   Record No. 1578-98-2          JUDGE SAM W. COLEMAN III
                                            MAY 2, 2000
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF HENRICO COUNTY
                      L.A. Harris, Jr., Judge

        Steven D. Benjamin (Betty Layne DesPortes;
        Benjamin & DesPortes, P.C., on briefs), for
        appellant.

        Robert H. Anderson, III, Assistant Attorney
        General (Mark L. Earley, Attorney General, on
        brief), for appellee.


     Salahundin David Webb was convicted in a bench trial of first

degree murder, robbery, possession of a firearm by a convicted

felon, four counts of abduction with intent to extort money, and

six counts of using a firearm during the commission of a felony.

He was sentenced to a total term of life plus 133 years in the

penitentiary, with seventy-five years suspended.  On appeal, Webb

argues that the trial court erred by failing to conduct a pretrial

hearing to address an alleged conflict of interest by his

court-appointed trial counsel arising from the fact that his

counsel was not being adequately compensated because of the

statutorily capped court-appointed attorney's fee system.  He also

contends that the statutory limitation of Code § 19.2-163 is

unconstitutional because it imposes an inflexible and inadequate cap on court-appointed attorneys' fees. Because the record fails to demonstrate that Webb was prejudiced by the fees allowed his counsel or that counsel's legal representation fell below an objective standard of reasonableness due to the fee allowance, we affirm.

BACKGROUND

On January 30, 1997, Webb and a codefendant robbed employees of a Friendly's restaurant in Henrico County. During the robbery, the codefendant shot and killed the restaurant manager. The court determined that Webb was indigent and appointed Steven D. Benjamin, an experienced criminal defense attorney, to represent Webb.

One week before trial and nearly seven months after indictment, Benjamin moved to dismiss the charges, asserting that (1) the statutory cap on attorneys' fees contained in Code § 19.2-163 is unconstitutional, (2) the compensation allowable under Code § 19.2-163 is inadequate and operated to deny Webb his right to conflict-free and effective assistance of counsel, and (3) the statutory compensation scheme causes a conflict of interest because it creates a financial disincentive for a lawyer to effectively represent his or her client. At the time Benjamin filed the motion to dismiss, he had already expended more than ninety hours working on the case, exceeding the time for which

compensation would be allowed under the statute by more than

thirty hours.[1]  On January 6, 1998, the day of trial, Benjamin

objected to the trial court's failure to conduct a pretrial

hearing on the alleged conflict of interest.  The trial court took

the motion under advisement and proceeded with trial.  The day

after trial, the court conducted a hearing on the motion to

dismiss and subsequently denied the motion, finding the

statutorily capped court-appointed attorney's fee system did not

create a conflict of interest in this case and no evidence in the

case indicated that Webb received "anything but effective

assistance of counsel."  The court ruled that the statutory

compensation scheme was not unconstitutional.

---

[1] Code § 19.2-163 provided, as of the date of trial in this
case, a maximum fee of $735 for the representation of a
defendant charged with a felony punishable by confinement for
more than twenty years; for representation in connection with
any other felony charge, $265; and for any misdemeanor
punishable by confinement, $132.  Count-appointed counsel also
may receive reimbursement for "reasonable expenses incurred" in
the defense of an indigent client.  The statute provided for "a
reasonable fee" for defending capital cases with no cap.
    For multiple violations of the same offense tried in the
same proceeding, a single fee shall be allowed.  The fees are
based on time and effort expended and were to be compensated at
the hourly rates established by the Supreme Court guidelines of
$40 for out-of-court work and $60 for in-court work.
    The General Assembly amended the statute in 1997 to provide
for increases in 1998 and 1999.

ANALYSIS

## A.  Post-trial Evidentiary Hearing

Webb argues that the court-appointed compensation scheme creates a financial disincentive and burdens and impairs an attorney's ability to represent his or her client, thus creating an "actual" conflict of interest.  Webb, citing Carter v. Commonwealth, 11 Va. App. 569, 400 S.E.2d 540 (1991), argues that the trial court, which had a duty to inquire and take "adequate steps" to determine the extent of the alleged conflict, erred in failing to conduct the inquiry prior to trial.  He argues that when an objection is made and a conflict of interest is claimed and shown to exist prior to trial, prejudice and ineffective assistance of counsel are presumed and reversal is automatic.

The trial court denied the motion, holding that Webb received competent and effective assistance of counsel.  The court further ruled that the statutory compensation scheme is not unconstitutional.  The record supports the trial judge's underlying factual determination and legal conclusion that no conflict of interest existed.  We will not disturb the factual finding in the absence of plain error.  See Code § 8.01-680.

"The sixth amendment fundamental right to effective assistance of counsel is so basic to a fair trial that an infraction of that right can never be dismissed as harmless error."  Carter, 11 Va. App. at 573, 400 S.E.2d at 542; see also

- 4 -

Holloway v. Arkansas, 435 U.S. 475, 489-90 (1978) (stating that where a Sixth Amendment violation taints the entire criminal proceeding, the violation can never be considered harmless). In order to prove ineffective assistance of counsel, a defendant must first demonstrate that his "attorney's conduct fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984). Second, the defendant must show that "there is a reasonable probability that, but for this deficient conduct the result of the trial would have been different." Id. at 694. Prejudice against a defendant's case is presumed when "an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 350 (1980). "Hence, if the defendant shows that his counsel actively represented actual conflicting interests that adversely affected his counsel's performance, prejudice is presumed." Carter, 11 Va. App. at 573, 400 S.E.2d at 543. "Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." Cuyler, 446 U.S. at 347.

In Carter, defense counsel moved to withdraw after allegations of misconduct were levied against counsel by the Commonwealth's attorney and were acknowledged by the trial court. The Commonwealth's attorney alleged that defense counsel harassed the victim's mother and pressured her into signing a release of the victim's psychological records. The mother revoked the

release.  The trial court conducted a hearing, which focused on the Commonwealth's allegation of misconduct rather than the revocation of the release.  The trial court did not rule on defense counsel's alleged impropriety; rather, the court informed the Commonwealth's attorney that he could initiate whatever disciplinary action he deemed appropriate.  After the hearing, defense counsel moved to withdraw, contending that a conflict of interest had arisen which forced counsel to protect their own interests rather than the defendant's interest.  Defense counsel asserted that the Commonwealth's attorney's threat of initiating disciplinary proceedings would hamper their ability to properly defend their client during the impending trial.  The trial court denied the motion to withdraw without making further inquiry.  The defendant was subsequently convicted on all charges.

We held in Carter that when defense counsel moved to withdraw, arguing that their representation of the defendant was compromised because of their own interests, the trial judge knew or should have known that a possible conflict of interest existed. We held that when a trial court fails to initiate an inquiry when the court knows or reasonably should know that a particular conflict exists, the law presumes the conflict resulted in ineffective assistance of counsel.  See Carter, 11 Va. App. at 573-74, 400 S.E.2d at 543.  We vacated the convictions and remanded the case to the trial court for the purpose of conducting

- 6 -

a hearing to determine whether a conflict of interest actually existed that denied the defendant his right to effective assistance of counsel.

Here, no factual basis supports Webb's argument that his attorney had a conflict of interest or that a purported conflict was reasonably apparent to the trial judge, requiring a pretrial inquiry. Benjamin asserts that the alleged conflict of interest was initially raised by Webb during an interview with a forensic psychologist who had been designated to evaluate Webb's competency to stand trial. The psychologist stated, as an example of Webb's inability to rationally communicate and cooperate with his attorney, that Webb believed Benjamin could not render adequate representation because Benjamin was court-appointed and because the statutory compensation scheme does not provide an economic incentive for court-appointed attorneys representing indigent defendants to provide the same level and quality of representation as they would for non-indigent clients. Based on Webb's statement to the psychologist, the trial court was not obligated to conduct a pretrial inquiry on whether Benjamin had a conflict of interest by continuing to represent Webb.

Additionally, Benjamin proved that Virginia is ranked fifty-first amongst the states and the District of Columbia for allowable compensation for court-appointed attorneys and that the disparity between Virginia and the other states is overwhelming.

Benjamin also introduced evidence that recent developments in criminal law, including bifurcated proceedings in felony cases and technological advancements in evidence gathering and legal research, have increased the burdens, obligations, and overhead costs of court-appointed attorneys in adequately preparing cases. Although Benjamin made a bare claim that this situation creates a potential conflict of interest because an attorney must choose between not being adequately compensated or not adequately representing his client, Benjamin neither alleged nor presented evidence that he labored under an actual conflict of interest. Understandably, he did not allege that he was unable or unwilling to zealously represent Webb because of financial constraints or considerations.

Moreover, his claim that the court-appointed compensation scheme created a financial disincentive to provide competent, quality representation in this case is belied by the record. By Benjamin's own account, he expended countless hours for which he was fully aware he would not receive compensation and, even after he filed the motion to dismiss asserting the conflict, Benjamin continued to vigorously represent and defend Webb at trial. We note, as did the trial court, that Benjamin never moved to withdraw from representation. Although we acknowledge the apparent dilemma created by an attorney's ethical obligation to zealously represent his or her client and the economic constraints

- 8 -

on the time he or she can devote to a case, we will not overturn a criminal conviction merely because the dilemma exists where no actual conflict is shown to exist and no ineffective assistance of counsel is proven.[2]

Given counsel's level of representation of his client, it could not reasonably have been apparent to the trial court that an actual conflict of interest existed.  The evidence does not prove that Benjamin had an actual conflict of interest that adversely affected his representation of Webb.  Webb had a hearing, as we provided in Carter, to consider whether a conflict of interest existed and whether he was prejudiced.  See Carter, 11 Va. App. at 574, 400 S.E.2d at 543 (vacating and remanding for hearing to determine if counsel labored under a conflict of interest).  The trial court conducted the hearing, albeit at the end of trial, and concluded counsel failed to establish that an actual conflict of interest existed or that Webb was prejudiced.  We find the evidence supports the trial court's determination that defense counsel had no actual conflict of interest that rendered his representation of Webb ineffective.

---

[2] A lawyer also has an ethical obligation to participate in serving the disadvantaged; thus, representing the disadvantaged for a "nominal" fee cannot, on its face, be deemed to create an actual conflict of interest.  See Virginia Code of Professional Responsibility EC2-27 (1999).

B.  Constitutionality of Code § 19.2-163

Webb argues that Code § 19.2-163 creates an actual conflict of interest because the fee caps are unreasonably low and inflexible.  Webb reasons that because the compensation scheme of Code § 19.2-163 is so low and inflexible, the statute negates the Supreme Court's mandate in Gideon v. Wainwright, 372 U.S. 335 (1963), and the Sixth Amendment guarantee that an indigent defendant shall be entitled to effective assistance of counsel, thus rendering the statute unconstitutional.  Additionally, Webb argues that Code § 19.2-163 is unconstitutional because it violates his due process rights.

"'In assessing the constitutionality of a statute[,] . . . [t]he burden is on the challenger to prove the alleged constitutional defect.'"  Woolfolk v. Commonwealth, 18 Va. App. 840, 848, 447 S.E.2d 530, 534 (1994) (quoting Perkins v. Commonwealth, 12 Va. App. 7, 14, 402 S.E.2d 229, 233 (1991)).

> "Every act of the legislature is presumed to be constitutional, and the Constitution is to be given a liberal construction so as to sustain the enactment in question, if practicable."  Bosang v. Iron Belt Bldg. & Loan Ass'n, 96 Va. 119, 123, 30 S.E. 440, 441 (1898).  "When the constitutionality of an act is challenged, a heavy burden of proof is thrust upon the party making the challenge.  All laws are presumed to be constitutional and this presumption is one of the strongest known to the law."  Harrison v. Day, 200 Va. 764, 770, 107 S.E.2d 594, 598 (1959).

<u>Moses v. Commonwealth</u>, 27 Va. App. 293, 298-99, 498 S.E.2d 451, 454 (1998).

Due process is satisfied if an enactment has a "'reasonable relation to a proper purpose and [is] neither arbitrary nor discriminatory.'" <u>Etheridge v. Medical Ctr. Hosps.</u>, 237 Va. 87, 97, 376 S.E.2d 525, 530 (1989) (quoting <u>Duke v. County of Pulaski</u>, 219 Va. 428, 437-38, 247 S.E.2d 824, 829 (1978)). Therefore, under the general rule, a statute is not violative of due process if it withstands the "rational basis" test. <u>See</u> <u>Etheridge</u>, 237 Va. at 97, 376 S.E.2d at 530. When legislation affects a "'fundamental right,' the constitutionality of the enactment will be judged according to the 'strict scrutiny' test, i.e., the law must be necessary to promote a compelling or overriding governmental interest." <u>Id.</u> at 97-98, 376 S.E.2d at 530 (citations omitted).

Code § 19.2-163 affects a fundamental right. "The right to have the assistance of counsel is a 'fundamental' right, although such right is not explicitly set out in the Constitution of Virginia." <u>Commonwealth v. Edwards</u>, 235 Va. 499, 505, 370 S.E.2d 296, 298-99 (1988); <u>see</u> <u>also</u> <u>Browning v. Commonwealth</u>, 19 Va. App. 295, 298, 452 S.E.2d 360, 362 (1994) (finding that the Sixth Amendment right to counsel is a fundamental right guaranteed to an accused by the Bill of Rights of the Virginia Constitution). Therefore, the fee caps in Code § 19.2-163 must be subjected to

- 11 -

strict scrutiny and can be justified only if the legislation is narrowly tailored to serve a compelling governmental interest. See generally Austin v. Michigan Chamber of Commerce, 494 U.S. 652, 657 (1990).

The Due Process clause requires that an indigent defendant receive an "adequate opportunity to present [his] claims fairly within the adversary system." Ross v. Moffitt, 417 U.S. 600, 612 (1974). The General Assembly has provided for a system where counsel is appointed to represent indigent defendants in the absence of waiver of counsel.[3] The statute provides a scheme and guidelines for compensating court-appointed counsel based upon an hourly rate to be set by the Supreme Court for time and effort expended with a cap for the types of cases. The issue is whether the legislation proscribing statutory caps on court-appointed attorneys' fees is narrowly tailored to serve a compelling state interest.

On March 3, 1994, the General Assembly adopted House Joint Resolution No. 147, authorizing a study and report examining the costs and effectiveness of the policies, practices, and priorities of Virginia's criminal justice system. See H.R. Res. 147, Va. Gen. Assem. (1995). Although the statutory fee caps

---

[3] The General Assembly has also provided for a system of public defenders in certain localities. See Code §§ 19.2-163.1 to -163.4.

for court-appointed attorneys' fees were not specifically

mentioned in the resolution and the results of the study were

not published,[4] the resolution mentioned the overall increase in

the criminal court caseload and that spending for the judiciary,

prosecution, and court-appointed criminal defense lawyers also

continued to grow. The resolution noted that continued or

increased funding of current criminal justice policies,

practices, and priorities would come only at the expense of

other pressing public needs in education and economic and human

resource development. We cannot say the General Assembly was

wrong in how it established its budgetary priorities. Accepting

for purposes of this opinion Webb's contention that the

statutory caps on attorneys' fees must be subjected to strict

scrutiny and that they can be upheld only if they are justified

by a compelling state interest, we cannot say on this record

that the state has deprived indigent defendants of their

constitutional right to effective assistance of counsel by the

method that it has budgeted and appropriated funds for this

---

[4] In 1985, the General Assembly adopted House Joint Resolution No. 324 authorizing a study and report on the defense of indigent defendants in the Commonwealth. The published results of that study recommended that a 100% increase in the maximum fee schedule was necessary to bring the fees up to the national average. The report recommended that a minimum 15% increase be instituted. The report stated that the increase in the maximum fee schedule was essential in order to meet the constitutional obligation of providing counsel to indigent defendants. See H.R. Res. 324, Va. Gen. Assem. (1985).

purpose. Code § 19.2-163 has structured a fee schedule for payment of fees that recognizes and incorporates the different needs and circumstances of representing indigent defendants for different types of offenses in the various courts. The statute provides for different hourly rates for different types of cases, including a higher hourly rate for more serious cases, and funds for "reasonable expenses incurred." Although in some instances determining whether legislation is narrowly tailored to serve a compelling governmental interest may require that the least restrictive approach be utilized, here we must look to whether the statute addresses the needs and financial demands inherent in defending against a criminal prosecution. In doing so, we find that Code § 19.2-163 is narrowly tailored to serve a compelling governmental interest; and, therefore, it is not unconstitutional.

Additionally, Webb has failed to show that the statute is unconstitutional as applied to him. He failed to show that the statutory cap on court-appointed attorneys' fees as applied to his attorney deprived him of his constitutional right to effective counsel and due process. As the trial court found, Benjamin rendered competent and effective assistance of counsel, and, in fact, worked many hours in excess of the number of hours that would be compensated within the statutory authorized maximum.

- 14 -

Finally, Webb claims the statutory compensation scheme renders any indigent defendant's Sixth Amendment right to effective counsel a nullity because it forces the court-appointed attorney to choose between two masters, the indigent defendant and the financial cost of doing business. However, to the extent Webb asserts that all court-appointed attorneys labor under this conflict of interest, he is precluded from raising this argument. "[G]enerally, a litigant may challenge the constitutionality of a law only as it applies to him or her." Coleman v. City of Richmond, 5 Va. App. 459, 463, 364 S.E.2d 239, 241-42 (1988). "That the statute may apply unconstitutionally to another is irrelevant; one cannot raise third party rights." Id. at 463, 364 S.E.2d at 242. But see Lewis v. Iowa Dist. Court for Des Moines County, 555 N.W.2d 216, 217-19 (Iowa 1996) (finding that court-appointed attorneys had standing to challenge the constitutionality of a statutory fee schedule in which the attorneys alleged violations of indigent defendants' rights because defendant's right to effective assistance of counsel and attorney's right to fair compensation are "inextricably intertwined"). To the extent Webb claims that the statutory caps for court-appointed counsel fees for indigent defendants are woefully inadequate, redress must come from the General Assembly. On this record, we do not find that the fee

schedule is so inadequate as to violate the Sixth or Fourteenth Amendments.

Accordingly, we find that Code § 19.2-163 is not unconstitutional, and we affirm Webb's convictions.

Affirmed.