COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Haley and Beales
Argued at Chesapeake, Virginia


DEAN ROBERT PODRACKY

v.        Record No. 0113-07-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE JAMES W. HALEY, JR.
JUNE 10, 2008


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge

James O. Broccoletti (Peter D. Greenspun; Zoby & Broccoletti, P.C.;
Greenspun, Davis & Leary, P.C., on brief), for appellant.

Robert H. Anderson, III, Senior Assistant Attorney General
(Robert F. McDonnell, Attorney General, on brief), for appellee.


Dean Robert Podracky ("Podracky") appeals his conviction for using a communications

system to solicit a person, he knew or had reason to believe was a minor, for certain sexual

offenses in violation of Code § 18.2-374.3(B).  The only question presented in this appeal is

whether the statute is facially overbroad because it prohibits free speech in violation of the First

Amendment to the United States Constitution.  Finding that Code § 18.2-374.3(B) does not

prohibit speech protected by the First Amendment, we affirm his conviction.

FACTS

A.M. telephoned the police in January of 2005 after receiving electronic mail from

Podracky.  A.M. had known Podracky for more than five years and had a sexual relationship

with him.  Podracky's e-mail to A.M. was introduced into evidence at trial.  The message

suggested that A.M. have a sexual encounter with a sixteen-year-old girl.  Again via e-mail,

Podracky also sent A.M. photographs of L.H, a sixteen-year-old girl Podracky met over the internet.

Before 2005, both A.M. and L.H. often communicated with Podracky by computer using a simultaneous text message program provided by America Online ("AOL"). After A.M. called the police, investigating officers identified L.H. from the photographs Podracky had sent A.M. Detective Lisa Krisik of the Virginia Beach Police Department received permission from the parents of L.H. for Detective Krisik to pretend to be L.H. while communicating with Podracky over the internet. Using L.H.'s AOL instant messenger identity, Detective Krisik engaged Podracky in several online conversations over the next few weeks. A.M. participated in these conversations as well. On January 17, Podracky suggested that the three of them meet at his hotel room and that the three of them also have sex with each other at the same time. On January 25, Podracky suggested to Detective Krisik that he would use a sex toy on L.H. and that he would teach her to perform fellatio on him. On January 27, Podracky sent messages to A.M. and Detective Krisik through an internet "chat room" that was only accessible by invitation. A.M. asked Detective Krisik, still pretending to be L.H., if she was really sixteen. Detective Krisik responded that she was. During the conversation, Podracky stated that he would bring a camera to take sexually explicit photographs of L.H. with A.M.

On January 27, and again on February 1, Podracky arranged that L.H. and A.M. meet him at the Crown Plaza Hotel on Monday, February 7, 2005. Again using AOL, Podracky confirmed these arrangements with A.M. and Detective Krisik on February 6 and 7. Detective Krisik, accompanied by other police officers, went to meet Podracky and saw him at the hotel. She recognized him from a photograph that he had sent to L.H. Podracky made statements to the police confirming that he was the person who sent the messages to L.H. Police also served a

search warrant on Podracky's hotel room. They found a laptop computer, a camera, a sex toy, and some condoms.

## ANALYSIS

At the time Podracky sent the messages that formed the basis of his conviction in the trial court, Code § 18.2-374.3(B) read as follows:

> It shall be unlawful for any person over the age of eighteen to use a communications system, including but not limited to computers or computer networks or bulletin boards, or any other electronic means, for the purposes of soliciting any person he knows or has reason to believe is a minor for (i) any activity in violation of § 18.2-355 or § 18.2-361, (ii) any activity in violation of § 18.2-374.1, (iii) a violation of § 18.2-374.1:1 or (iv) any activity in violation of subsection A of § 18.2-370. As used in this subsection "use a communications system" means making personal contact or direct contact through any agent or agency, any print medium, the United States mail, any common carrier or communication common carrier, any electronic communication system, or any telecommunications, wire, computer or radio communications system.[1]

Relying on our Supreme Court's recent decision in <u>Jaynes v. Commonwealth</u>, 275 Va. 341, 657 S.E.2d 478 (2008), the Commonwealth argues that Podracky does not have standing to present a facial challenge to the statute. We do not address this argument. "[A]n appellate court decides cases 'on the best and narrowest ground available.' . . . Coupled with these principles of judicial prudence is the proposition that an appellate court may structure a decision on an

---

[1] Amendments to Code § 18.2-374.3 became effective on July 1, 2007. Former subsection A was designated subsection B without substantive changes to the text. Former subsection B, the statute we address in this opinion, was divided into new subsections C, D, and E. New subsection C makes it unlawful to solicit with lascivious intent a person the defendant knows or has reason to believe is under the age of 15 for specific sexual acts. New subsection D essentially establishes a less severe penalty for violations of new subsection C when the defendant knows or has reason to believe the persons solicited is under 18. New subsection D prohibits solicitation of any person the defendant knows or has reason to believe is a minor for the offenses listed in former subsection B, the statute in this case, except that new subsection D does not cover solicitations to violate subsection A of Code § 18.2-370. However, the acts mentioned in new subsection C are the acts that are prohibited by subsection A of Code § 18.2-370.

'assuming but not deciding' basis." Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628

S.E.2d 74, 77 (2006) (quoting Air Courier Conference v. American Postal Workers Union, 498

U.S. 517, 531 (1991) (Stevens, J., concurring)).  Accordingly, we assume without deciding that

Podracky has standing to offer a First Amendment challenge to Code § 18.2-374.3(B).  We,

nonetheless, conclude that the statute does not prohibit constitutionally protected speech.

FIRST AMENDMENT OVERBREADTH

"As a general principle, the First Amendment bars the government from dictating what

we see or read or speak or hear."  Ashcroft v. Free Speech Coalition, 535 U.S. 234, 245-46

(2002).  However, not all words are entitled to the protection of the First Amendment, and the

weight of authorities in Virginia and elsewhere clearly permit the state to prohibit the solicitation

of a crime.

> Although agreements to engage in illegal conduct undoubtedly
> possess some element of association, the State may ban such
> illegal agreements without trenching on any right of association
> protected by the First Amendment.  The fact that such an
> agreement necessarily takes the form of words does not confer
> upon it, or upon the underlying conduct, the constitutional
> immunities that the First Amendment extends to speech.  Finally,
> while a solicitation to enter into an agreement arguably crosses the
> sometimes hazy line distinguishing conduct from pure speech,
> such a solicitation, even though it may have an impact in the
> political arena, remains in essence an invitation to engage in an
> illegal exchange for private profit, and may properly be prohibited.

Brown v. Hartlage, 456 U.S. 45, 55 (1982).  "The government, of course, may punish adults who

provide unsuitable materials to children, *and it may enforce criminal penalties for unlawful*

*solicitation*."  Free Speech Coalition, 535 U.S. at 251-52 (citing Ginsberg v. New York, 390 U.S.

629 (1968)) (emphasis added).  "Criminal solicitation involves the attempt of the accused to

incite another to commit a criminal offense."  Branche v. Commonwealth, 25 Va. App. 480, 490,

489 S.E.2d 692, 697 (1997).

As the United States Supreme Court recently reaffirmed: "Offers to engage in illegal transactions are categorically excluded from First Amendment protection." United States v. Williams, 128 S. Ct. 1830, 2008 U.S. LEXIS 4314, at *24 (May 19, 2008) (holding that "offers to provide or requests to obtain child pornography are categorically excluded from the First Amendment"); see also Pederson v. City of Richmond, 219 Va. 1061, 1066, 254 S.E.2d 95, 98 (1979). See also Singson v. Commonwealth, 46 Va. App. 724, 742-43, 621 S.E.2d 682, 690-91 (2005). "We know of no authoritative holding which extends First Amendment protection to a solicitation to commit an act lawfully prohibited by statute." Riley v. United States, 298 A.2d 228, 233 (D.C. 1972). "Reasonable prohibitions against soliciting unlawful acts do not violate free speech rights. Because First Amendment protection does not extend to statements made in the solicitation of criminal acts, [Georgia statute forbidding solicitation of sodomy] does not reach protected speech." Christensen v. State, 468 S.E.2d 188, 190 (Ga. 1996).

In arguing that Code § 18.2-374.3(B) prohibits constitutionally protected free speech, Podracky relies on Reno v. American Civil Liberties Union, 521 U.S. 844 (1997). In Reno, the United States Supreme Court struck down two provisions of the Communications Decency Act ("CDA"), provisions that prohibited the knowing transmission of obscene or indecent messages to persons under eighteen. Id. at 859-60. The Court struck down the disputed provisions of the CDA because they prohibited constitutionally protected communications between adults over the internet. Id. at 876.

> In arguing that the CDA does not so diminish adult communication, the Government relies on the incorrect factual premise that prohibiting a transmission whenever it is known that one of its recipients is a minor would not interfere with adult-to-adult communication. The findings of the District Court make clear that this premise is untenable. Given the size of the potential audience for most messages, in the absence of a viable age verification process, the sender must be charged with knowing that one or more minors will likely view it. Knowledge that, for instance, one or more members of a 100-person chat group will be

- 5 -

minor – and therefore that it would be a crime to send the group an indecent message – would surely burden communication among adults.

Id.  Podracky argues that, in light of the language quoted above, the knowledge element of Code § 18.2-374.3(B) as to the age of the person solicited ("for the purposes of soliciting any person he knows or has reason to believe is a minor") does not save the constitutionality of the statute because an internet user cannot know whether the person they are soliciting is a minor.

We disagree.  Under the statute in Reno, someone could commit a crime by publishing indecent materials on the internet, materials that adults have a constitutional right to send and to see.  Because the number of potential recipients is enormous, given the size of the internet, a person publishing such materials would still be guilty of a crime because he could be charged with constructive knowledge of the near certainty that at least one minor would view the materials.  We believe this view of Reno's assessment of the significance of the CDA's knowledge element explains Reno's emphasis on the unavailability of cheap, reliable age-verification technology for the screening of visitors to sexually explicit websites.

> As a practical matter, the Court also found that it would be prohibitively expensive for noncommercial--as well as some commercial--speakers who have Web sites to verify that their users are adults.  [ACLU v. Reno, 929 F. Supp. 824,] 845-848 [(E.D. Pa. 1996)] (findings 95-116).  These limitations must inevitably curtail a significant amount of adult communication on the Internet.  By contrast, the District Court found that "despite its limitations, currently available *user-based* software suggests that a reasonably effective method by which *parents* can prevent their children from accessing sexually explicit and other material which *parents* may believe is inappropriate for their children will soon be widely available."  Id., at 842 (finding 73).

Id.

Unlike the statute in Reno, Code § 18.2-374.3(B) proscribes, not the knowing *communication* of indecent materials to minors, but only the knowing use of a communications system to solicit a minor for certain criminal acts.  In United States v. Dhringa, 371 F.3d 557 (9th

Cir. 2004), the Court of Appeals for the Ninth Circuit upheld the constitutionality of 18 U.S.C.

§ 2422(b), which forbids the knowing inducement of a minor to engage in sexual activity that is

a criminal offense. Id. at 562. Like Podracky, the defendant relied on Reno, and the Court

distinguished the unconstitutional CDA provisions from 18 U.S.C. § 2422(b). We believe the

meaningful difference between the statutes analyzed in Dhringa is also obvious to anyone

comparing the terms of the unconstitutional CDA provisions with Code § 18.2-374.3(B).

> For example, [§ 2422(b)] would not criminalize speech that is
> received by minors but is not spoken with the intent to persuade,
> induce, entice or coerce a minor into illegal sexual activity. In this
> delineation between criminal and lawful behavior lies a key
> distinction between the CDA provision considered in Reno and
> § 2422(b). The CDA criminalized speech – even if directed to a
> general audience – once it became known to the speaker that a
> minor was accessing the information. Because the speaker's
> burden of restricting minors' access to otherwise legitimate speech
> would be so great, the statute effectively silenced the speaker
> altogether, imposing an impermissible content-based blanket
> restriction that included legitimate adult communication. In
> comparison, as a functional matter, § 2422(b) requires that an adult
> cease inducement for sex once he becomes aware that the object of
> his inducement is a minor – hardly a burden to legitimate speech,
> as the statute does not prevent the speaker from communicating
> with other adults.

Id. (internal citation omitted). Accordingly, we reject Podracky's argument that the United

States Supreme Court's decision in Reno controls the outcome of this case.

While there is no Virginia case expressly deciding whether Code § 18.2-374.3(B) is

unconstitutionally overbroad, several other jurisdictions have upheld similar statutes in cases

involving the solicitation of minors for sexual offenses using the internet. State v. Colosimo, 142

P.3d 352, 355 (Nev. 2006); People v. Cervi, 717 N.W.2d 356, 366-68 (Mich. Ct. App. 2006);

State v. Snyder, 801 N.E.2d 876, 882-83 (Ohio Ct. App. 2003); State v. Backlund, 672 N.W.2d

431, 442 (N.D. 2003); Laughner v. State, 769 N.E.2d 1147 (Ind. App. 2002); State v.

Ruppenthal, 771 N.E.2d 1002, 1006 (Ill. App. Ct. 2002); State v. Robins, 646 N.W.2d 287,

- 7 -

319-20 (Wi. 2002); People v. Foley, 731 N.E.2d 123, 128 (N.Y. 2000); Hatch v. Superior Court, 94 Ca. Rptr. 2d 453, 475 (Cal. Ct. App. 2000).

Federal decisions addressing the sexual solicitation of minors over the internet also hold that such solicitations are not protected by the First Amendment. "[T]he defendant simply does not have a First Amendment right to persuade minors to engage in illegal sex acts." United States v. Bailey, 228 F.3d 637, 639 (6th Cir. 2000). See also United States v. Tykarsky, 446 F.3d 458, 472-73 (3d Cir. 2006); United States v. Thomas, 410 F.3d 1235, 1243-44 (10th Cir. 2005); United States v. Johnson, 376 F.3d 689, 694-95 (7th Cir. 2004); Dhingra, 371 F.3d at 561-63; United States v. Meek, 366 F.3d 705, 721-22 (9th Cir. 2004); United States v. Panfil, 338 F.3d 1299, 1300-01 (11th Cir. 2003). "Speech attempting to arrange the sexual abuse of children is no more constitutionally protected than speech attempting to arrange any other type of crime." United States v. Hornaday, 392 F.3d 1306, 1311 (11th Cir. 2004).

Podracky attempts to distinguish only one of these cases, the decision of the Court of Appeals of New York in Foley, 731 N.E.2d at 128. He argues that the statute affirmed by Foley was constitutional, but that Code § 18.2-374.3(B) is not, because, unlike the New York statute, Code § 18.2-374.3(B) prohibits the solicitation of a child to commit offenses that can occur between consenting adults, specifically prostitution[2] and crimes against nature. Podracky suggests that this means that Code § 18.2-374.3(B) prohibits the constitutionally protected right of adults to send and receive messages regarding prostitution and crimes against nature, and is, therefore, unconstitutionally overbroad.

---

[2] Podracky is incorrect that Code § 18.2-374.3(B), at the time of appellant's conviction, prohibited the use of a communications system to solicit a minor for prostitution. The statute does prohibit solicitation of a person the defendant knows or has reason to believe is a minor for any activity in violation of Code § 18.2-355 (taking or detaining a person for the purposes of prostitution). However, the statute that prohibits prostitution, Code § 18.2-346, is not mentioned in either the former or amended version of Code § 18.2-374.3.

Podracky's argument is wrong for two reasons.  First, it ignores the text of Code § 18.2-374.3(B).  The statute applies only to an adult who uses a communications system "for the purposes of soliciting any person he knows or has reason to believe is a minor" for certain criminal offenses.  By its terms, the statute does not apply to an adult's solicitation of anyone he does *not* have reason to believe is a minor for any offense.

Second, "solicitation" is a legal term that has long been understood to exclude the sort of constitutionally protected speech Podracky incorrectly suggests is prohibited by Code § 18.2-374.3(B).

> However there is a significant distinction between advocacy and solicitation of law violation in the context of freedom of expression.  Advocacy is the act of "pleading for, supporting, or recommending active espousal" and, as an act of public expression, is not readily disassociated from the arena of ideas and causes, whether political or academic.  Solicitation, on the other hand, implies no ideological motivation but rather is the act of enticing or importuning on a personal basis for personal benefit or gain.  Thus advocacy of sodomy as socially beneficial and solicitation to commit sodomy present entirely distinguishable threshold questions in terms of the First Amendment freedom of speech.  The latter, we hold, is not protected speech.

District of Columbia v. Garcia, 335 A.2d 217, 224 (D.C. 1975) (internal citations omitted).  The general discussion of crimes against nature or the advocacy of their legalization through the political process, while protected by the First Amendment, simply is not "solicitation" as that term is understood in our First Amendment jurisprudence.  Code § 18.2-374.3(B), which prohibits only certain kinds of criminal solicitation using a communications system, cannot plausibly be read to proscribe speech of this kind.

Finally, Podracky argues that Code § 18.2-374.3(B) is unconstitutional because it prohibits an adult from soliciting another adult when, as in this case, he mistakenly believes the person solicited is a minor when, in fact, the person solicited is both an adult and an undercover police officer.  We agree that, by its terms, the statute forbids this kind of solicitation.  The text

of Code § 18.2-374.3(B) does not require the solicitation of an actual minor, only the use of a communications system "for the purposes of soliciting any person he knows or has reason to believe is a minor" for specified criminal offenses. However, we do not believe Podracky's solicitations of the undercover police officer were protected speech for the purposes of the First Amendment.

The United States Supreme Court in Williams, 128 S. Ct. 1830, 2008 U.S. LEXIS 4314, rejected a similar argument challenging the constitutionality of the federal child pornography statute:

> Offers to deal in illegal products or otherwise engage in illegal activity do not acquire First Amendment protection when the offeror is mistaken about the factual predicate of his offer. The pandering and solicitation made unlawful by the Act are sorts of inchoate crimes — acts looking toward the commission of another crime, the delivery of child pornography. As with other inchoate crimes — attempt and conspiracy, for example — impossibility of completing the crime because the facts were not as the defendant believed is not a defense. "All courts are in agreement that what is usually referred to as 'factual impossibility' is no defense to a charge of attempt."

Id. at *27 (citations omitted).

Podracky's argument is also similar to the argument rejected by our Supreme Court in Hix v. Commonwealth, 270 Va. 335, 619 S.E.2d 80 (2005). In Hix, the defendant had internet conversations with an undercover police officer, and the officer deceived the defendant into believing that "she" was a thirteen-year-old girl. Id. at 338, 619 S.E.2d at 81. The defendant was convicted of violating Code § 18.2-374.3 (the indictment did not specify the subsection); he was also convicted of an attempted violation of Code § 18.2-370 (indecent liberties with a minor). Id. at 337, 619 S.E.2d at 81. The defendant appealed, arguing that the evidence was insufficient for a conviction as a matter of law because the person solicited was an adult police officer and not a child. Id. at 341-42, 619 S.E.2d at 84. After analyzing the distinction between

"legal" and "factual" impossibility in prior decisions, our Supreme Court affirmed the defendant's conviction.

> The Court of Appeals correctly determined that a police officer posing as a child in an internet chat room is only an impediment to the commission of a crime, an extraneous fact outside of the knowledge and control of the defendant. The non-existence of the "real child" does not make the crime of attempted indecent liberties inherently or legally impossible, but only factually impossible. Thus, the fact that Hix and the defendant in Bloom [v. Commonwealth, 34 Va. App. 364, 542 S.E.2d 18, aff'd, 262 Va. 814, 554 S.E.2d 84 (2001),] were communicating with adult law enforcement officers is not a defense to the attempted crime.

Id. at 345, 619 S.E.2d at 86.

Hix does not discuss the First Amendment. Yet the case does establish that Podracky's messages to Detective Krisik were criminal solicitations, a form of communication not protected by the First Amendment according to our Supreme Court's decision in Pederson. "First Amendment protection is not afforded statements made in the solicitation of criminal acts." Pederson, 219 Va. at 1066, 254 S.E.2d at 98. Hix also establishes that Podracky was guilty of criminal solicitation despite the fact that he mistakenly addressed his solicitations to an adult police officer. See also Huffman v. Commonwealth, 222 Va. 823, 827, 284 S.E.2d 837, 840 (1981) ("It is immaterial whether the solicitation is of any effect and whether the crime solicited is in fact committed. . . . The gist of [the] offense is incitement.").

Podracky's argument that Code § 18.2-374.3(B) is unconstitutional therefore depends on the existence of a *constitutional* factual impossibility exception to the general rule that criminal solicitation is not constitutionally protected speech. We can find no such exception in the text of the Constitution or the cases interpreting it. "[The defendant] cites no authority for the proposition that the legal or factual impossibility defense is constitutionally protected, and we have found none." German v. United States, 525 A.2d 596, 606 (D.C. 1987).

Chief Justice Marshall wrote that "[t]he power of punishment is vested in the legislative, not in the judicial department. It is the legislature, not the Court, which is to define a crime, and ordain its punishment." United States v. Wiltberger, 18 U.S. (5 Wheat.) 76, 95 (1820). See also Dowling v. United States, 473 U.S. 207, 213-14 (1985). There may be limits to what the legislature may punish as criminal solicitation; for example, "it would be illogical and untenable to make solicitation of a non-criminal act a criminal offense." Pederson, 219 Va. at 1065, 254 S.E.2d at 98. However, each of the acts mentioned in Code § 18.2-374.3(B) is defined by statute as a crime, and Podracky makes no argument that he has a substantive due process right to violate Code §§ 18.2-355; 18.2-361; 18.2-374.1; 18.2-374.1:1; or 18.2-370. Indeed, we rejected similar arguments in McDonald v. Commonwealth, 48 Va. App. 325, 630 S.E.2d 754 (2006) (holding that there is no constitutional right to engage in consensual sodomy with a person under eighteen), and Singson, 46 Va. App. at 739, 621 S.E.2d at 688 (holding there is no constitutional right to engage in consensual sodomy in public).

Podracky has not shown that Code § 18.2-374.3(B) prohibits speech protected by the First Amendment. We therefore affirm his conviction.

Affirmed.