UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Chafin and O'Brien
Argued at Fredericksburg, Virginia


ROBERT LEIGH STOLTZ

v.        Record No. 0352-17-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE MARY GRACE O'BRIEN
JUNE 19, 2018


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Penney S. Azcarate, Judge

Jonathan P. Sheldon (Thomas Walsh; Sheldon, Flood & Haywood,
PLC; Petrovich & Walsh, PLC, on briefs), for appellant.

Robert H. Anderson, III, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


A jury convicted Robert Leigh Stoltz ("appellant") of using a computer to solicit a minor, in violation of Code § 18.2-374.3.  Appellant contends that Code § 18.2-374.3 is unconstitutional as applied to him.[1]  We disagree and affirm his conviction.

BACKGROUND

On the afternoon of November 4, 2014, appellant placed an advertisement for sexual companionship in the "casual encounters" section of Craigslist.[2]  The advertisement was entitled, "Can I CUM on you?  Quick shot and heavy load! – m4w – 34 (northern va)" and stated:

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant initially also asserted that Code § 18.2-374.3 was facially unconstitutional, but he abandoned this position at oral argument.

[2] Craigslist, an online classified advertisement website, has since removed this section.

Sorry for the repost – but too many flakes…

Still so horny-blue balls type weekend.  I really really need to shoot my load and would love to shoot it on someone who is turned on by cum shots, cum fetishes, or just loves to get cummed on.  Also anyone that is curious about it too . . . I can be quick-or not-your call.

I will cum wherever you want me to--> ass/chest/face/mouth/pussy/stomach/feet, etc.  You will need to host at your place-or your office-car.

Safe, VERY clean, normal and cute white-guy here.  Athletic physique with a good sized and very cum filled cock.  Discrete.

The advertisement included a photograph of an erect penis.

Detective Blake Albritton of the Fairfax County Police Department's Child Exploitation Unit saw appellant's advertisement and responded, posing as a thirteen-year-old girl. Craigslist does not verify the identity or age of anyone who posts, responds to, or simply views advertisements.  Users can request anonymous email accounts to avoid revealing their contact information.

Using the pseudonym "Annie," Detective Albritton sent the following email to appellant:

hi, I'm bored and off of school today, but i'm only 13…i knwo I hsouldn't be in there but i thought ur ad was umm like cool and stuff so i thought i'd say hi.  i have a pic if you want but if i'm 2 young tahts o.k. and i wont' bother u.  i can't believe i'm sending this e-mail!!! annie.

Appellant responded from the anonymous email account:  "Hi – thanks for replying – I'd love to see a picture . . . I am definitely interested and 23 isn't too young . . . :)."  Detective Albritton emailed back several minutes later stating, "13 not 23 hehe…"  Appellant asked to see a picture of "Annie." Detective Albritton, who is male, sent appellant a picture of a twenty-five-year-old female officer. Appellant replied:  "No worries.  Thanks for sending – you're very cute!  So what did you like about my ad?  Where about do you live?"  "Annie" asked appellant to send his picture, and upon receiving it, "Annie" responded that he "look[ed] like [the] guy from [M]ighty [D]ucks."

"Annie" and appellant continued exchanging emails. "Annie" told appellant that she lived near the Walmart in Burke. She was home alone because her parents were out of town and she did not have school that day. In one email, "Annie" asked appellant what he wanted to do and mentioned that she did not drive. Appellant responded, "I'd like to do what I said in my post, but am open. What do you have in mind? And when would you be available? I can drive to you so no worries."

Later that afternoon, appellant began to communicate with "Annie" on Yahoo messenger. "Annie" again asked what appellant wanted to do with her, and he replied: "I'm really open-but if you're curious maybe I can help? I'm fairly horny tho . . . lol." Appellant later specified: "i'd like to kiss you and get naked with you. then touch your body all over and you can touch me all over too." He asked "Annie" if she had kissed a boy before and if she liked being touched.

"Annie" asked appellant if she could call him to ascertain if he was "real." Appellant was initially reluctant but he eventually provided his phone number. A female detective, also posing as "Annie," called him. During the telephone conversation, appellant truthfully identified himself as Robert. "Annie" reiterated that she was thirteen years old, and appellant asked if that was "really" her age. "Annie" responded affirmatively and then asked if her age was "okay" with appellant. Appellant stated, "Uhhh, you know. Once I meet you maybe it will be better." He indicated that initially he wanted to "just talk" with Annie, but she had responded to his Craigslist post and he was "kind of in the mood to . . . you know." They agreed to meet outside the Burke Walmart near "Annie's" house around 7:30 p.m., and "Annie" requested that appellant "bring protection" with him. Appellant stated that he would be driving a "blue Explorer SUV."

At 7:32 p.m. that evening, appellant texted "Annie" that he was at Walmart. "Annie" told him to meet her "on [the] side of [the] garden center" at the store and asked him what he was wearing. Appellant responded, "Black shirt/jeans. Went back to the car. Too many people looking

at me funny." From the Walmart parking lot, Detective Albritton observed appellant respond to "Annie's" text messages and then walk toward a white BMW SUV. Appellant went into a nearby Dairy Queen, returned to the BMW, and left the parking lot.

Detective Albritton stopped the BMW a few minutes later and explained to appellant "why [he] was there, and what [he] was looking for." Appellant, who was wearing black pants and a white sweater, denied going to Walmart to meet anyone. Instead, appellant said he was in the area to play golf at a nearby course, and then decided to buy fertilizer at Walmart and ice cream at Dairy Queen. Appellant allowed Detective Albritton to examine his phone, but Detective Albritton did not see any evidence of the messages between "Annie" and appellant. Because he could not positively identify appellant as the man who solicited a sexual encounter from "Annie," Detective Albritton did not arrest appellant at that time.

Detective Albritton obtained Craigslist records identifying the IP address for the computer that was used to post the initial advertisement. Based on this information, Detective Albritton was able to trace the advertisement back to a computer located at appellant's residence in Falls Church.

The police executed a search warrant at appellant's home and recovered his personal laptop. On November 11, 2014, Detective Albritton arrested appellant and interviewed him. Initially, appellant maintained that he was in Burke to play golf and then decided to stop at Walmart for fertilizer. Eventually, however, he admitted that he placed the Craigslist advertisement, sent the subsequent messages to "Annie," and went to Walmart to determine if she "was real."

At trial, appellant, who is the CEO of a web design company, acknowledged that he placed the advertisement in the "casual encounters" section of Craigslist. He stated that he thought "Annie" was "playing around" about her age and that she might be interested in "fantasy, role playing…[or] looking for information." Appellant also testified that he suspected "Annie" was an adult because she sounded like a mature woman when they spoke by telephone and she recognized

an actor from a 1990s-era movie. However, he also testified that he did not believe he was communicating with the actual woman in the picture "Annie" had sent him. Instead, he thought the individual posing as "Annie" was trying to "scam" him, and he continued to engage online because he was "just curious to see what they were going for." Appellant also testified that he had no intention of actually meeting someone at Walmart, which is why he provided "Annie" with false information about the type of car he was driving and what he was wearing.

At the conclusion of the evidence, the court instructed the jury on the elements of the crime. One instruction included the language, "[t]he Commonwealth must prove beyond a reasonable doubt each of the following elements of th[e] crime . . . (3) That [appellant] knew, or had reason to believe, that such minor was less than fifteen (15) years of age at the time."[3] The court denied appellant's request for an alternative instruction that would have required the Commonwealth to prove beyond a reasonable doubt "that [appellant] knew, or believed, that such child was less than fifteen (15) years of age at the time." The court further instructed the jury that "[r]eason is a faculty of the mind by which it distinguishes truth from falsehood, good from evil, and which enables the possessor to deduce inferences from facts or from propositions."

During deliberations, the jury asked the court for "clarification about the exact meaning of [']had reason to believe['] in the context of minor or not. Specifically, does he have to find the reason credible in order to have [']reason to believe.[']" The court did not specifically answer the question but directed the jury to review the instructions of law.

The jury found appellant guilty. Following his conviction, appellant moved to set aside the jury verdict. The court denied his motion and imposed the jury's sentence.

---

[3] This instruction accurately tracked the wording of Code § 18.2-374.3.

DISCUSSION

We review a challenge to the constitutionality of a statute *de novo*. Shivaee v.

Commonwealth, 270 Va. 112, 119, 613 S.E.2d 570, 574 (2005). "[A]ll acts of the General

Assembly are presumed to be constitutional," Yamaha Motor Corp. v. Quillian, 264 Va. 656, 665,

571 S.E.2d 122, 126 (2002), and "we are required to resolve any reasonable doubt regarding the

constitutionality of a statute in favor of its validity," In re Phillips, 265 Va. 81, 85-86, 574 S.E.2d

270, 272 (2003). The burden rests on the party challenging the enactment to prove that the statute is

unconstitutional. Marshall v. N. Va. Transp. Auth., 275 Va. 419, 428, 657 S.E.2d 71, 75 (2008).

See also Webb v. Commonwealth, 32 Va. App. 337, 347, 528 S.E.2d 138, 143 (2000) (noting that a

"heavy burden of proof is thrust upon the party" challenging the constitutionality of a statute

(quoting Harrison v. Day, 200 Va. 764, 770, 107 S.E.2d 594, 598 (1959))).

Code § 18.2-374.3(C)(1) and (2) provide:

> It is unlawful for any person 18 years of age or older to use a communications system, including but not limited to computers or computer networks or bulletin boards, or any other electronic means, for the purposes of soliciting, with lascivious intent, any person *he knows or has reason to believe* is a child younger than 15 years of age to knowingly and intentionally:

> Expose his sexual or genital parts to any child to whom he is not legally married or propose that any such child expose his sexual or genital parts to such person;

> Propose that any such child feel or fondle his own sexual or genital parts or the sexual or genital parts of such person or propose that such person feel or fondle the sexual or genital parts of any such child.

(Emphasis added).

Appellant contends that Code § 18.2-374.3 is unconstitutional as applied to him because it

criminalizes conduct that is protected by the First Amendment, and this overbreadth violates his

right to due process. He asserts that he was convicted for innocent conduct because no child was

involved and he "reasonably, objectively and correctly believed" that he was communicating with an adult.

Appellant relies on Reno v. Am. Civil Liberties Union, 521 U.S. 844 (1997). In Reno, the United States Supreme Court struck down two provisions of the Communications Decency Act ("the CDA") that impermissibly restricted protected Internet communication between adults. 521 U.S. at 885. The Court found that the contested provisions of the CDA placed an undue burden on protected speech by requiring a person sending an online message to determine whether a minor was likely to view it. Id. at 876. As the Court reasoned, "[k]nowledge that, for instance, one or more members of a 100-person chat group will be minor – and therefore that it would be a crime to send the group an indecent message – would surely burden communication among adults." Id.

However, Code § 18.2-374.3 differs significantly from the CDA. Nothing in the Virginia statute restricts constitutionally safeguarded communication between adults. Rather, it proscribes the non-constitutionally protected solicitation of minors. See, e.g., Podracky v. Commonwealth, 52 Va. App. 130, 139, 662 S.E.2d 81, 86 (2008) ("[T]he defendant simply does not have a First Amendment right to persuade minors to engage in illegal sex acts." (quoting United States v. Bailey, 228 F.3d 637, 639 (6th Cir. 2000))). A statute criminalizing the solicitation of a minor for sex is different from a statute punishing distribution of indecent materials. We addressed this precise issue and upheld the constitutionality of Code § 18.2-374.3 in Podracky, 52 Va. App. at 143, 662 S.E.2d at 88. There, we distinguished Reno by noting that Code § 18.2-374.3 only punishes speech that is made "with the intent to persuade, induce, entice or coerce a minor into illegal sexual activity." Id. at 137, 662 S.E.2d at 85 (quoting United States v. Dhingra, 371 F.3d 557, 562 (9th Cir. 2004)).

Appellant asserts as a foregone conclusion that he "reasonably [and] objectively" believed that "Annie" was an adult. However, the credibility of his assertion was a factual determination,

properly made by the jury. See, e.g., Stern v. Meisner, 812 F.3d 606, 611 (7th Cir. 2016) (rejecting defendant's argument that a similar statute was unconstitutional because it allowed the jury to convict him where he subjectively believed the victim was an adult: "[The defendant's] argument is not one of legal construction. Rather, it is one based on evidence and credibility, which is the jury's charge. The jury chose to reject his defense."). The fact finder is "entitled to evaluate the reasonableness of [a] defendant's story." Pease v. Commonwealth, 39 Va. App. 342, 357, 573 S.E.2d 272, 279 (2002) (*en banc*). Here, the jury rejected appellant's explanation that he thought he was communicating with an adult, not a minor. Further, the jury also was entitled to reject appellant's explanation that he was at Walmart not to meet a thirteen-year-old girl with whom he had been communicating, but to discover the identity of an adult who had tried to "scam" him. "[T]he jury was not required to believe the defendant's explanation, and if that explanation is not believed, the jury may infer that the accused is lying to conceal his guilt." Id. (citing Black v. Commonwealth, 222 Va. 838, 842, 284 S.E.2d 608, 610 (1981)).

To find appellant guilty, the jury was required to determine that appellant "knew, or had reason to believe" that he was communicating with a minor. The record is replete with evidence supporting the jury's conclusion. Detective Albritton unequivocally held himself out to appellant as a thirteen-year-old girl, "Annie." On three different occasions, in emails and a telephone conversation, "Annie" reiterated that she was thirteen years old. Appellant never communicated to "Annie" that he would not be interested in someone who was actually thirteen years old; instead, he continued to solicit her for sexual activities by stating that he was "horny" and wanted to engage with her in the activities he referenced in his advertisement. Appellant also told her that he wanted to "kiss [her] and get naked with [her,] then touch [her] body all over and [she] can touch [him] all over too." Further, appellant drove some distance from his home in Falls Church to the Burke Walmart near "Annie's" house where they arranged to meet. Based on appellant's continued

conversation with "Annie," and his attempt to meet her in person, the jury was entitled to conclude that he knew or had reason to believe he was soliciting a minor.

Appellant's reliance on Sandstrom v. Montana, 442 U.S. 510 (1979), is misplaced. In Sandstrom, the United States Supreme Court ruled that a jury instruction advising that "a person intends the ordinary consequences of his voluntary acts" violated the constitutional requirement that the prosecution prove every element of the offense beyond a reasonable doubt. 442 U.S. at 517-19. The Court held that based on the instruction, a "reasonable juror could have given the presumption conclusive or persuasion-shifting effect." Id. at 519. Here, the jury instructions did not involve any burden-shifting presumptions. The court properly instructed the jury that it was the Commonwealth's burden to prove beyond a reasonable doubt every element of the crime of using a computer to solicit a minor. Further, the statute was constitutional as applied to appellant because in convicting him, the jury was guided by the instruction that "reason" is the capacity to distinguish truth from falsehood.

Finally, this case differs from McDonnell v. United States, 136 S. Ct. 2355 (2016), also relied upon by appellant. In McDonnell, the United States Supreme Court held that the jury instruction defining "official act" in a bribery prosecution was legally erroneous and "raise[d] significant constitutional concerns." Id. at 2372. The Supreme Court determined that the government's overbroad definition of "official act" "would likely chill federal officials' interactions with the people they serve and thus damage their ability effectively to perform their duties." Id. Here, however, the jury determined that appellant knew or had reason to believe he was communicating with a minor, and therefore, no constitutional right was implicated. Appellant's contention that the statute is unconstitutional as applied to him requires us to find the jury's factual determination concerning his credibility was "plainly wrong or without evidence to support it." See

<u>Lynn v. Commonwealth</u>, 27 Va. App. 336, 351, 499 S.E.2d 1, 8 (1998).  We decline to make that finding.

By enacting Code § 18.2-374.3, the General Assembly "clearly intended to protect children from people who would take advantage of them *before* the perpetrator could commit a sexual assault on an actual child."  <u>Grafmuller v. Commonwealth</u>, 57 Va. App. 58, 65, 698 S.E.2d 276, 280 (2010).  The legislature's attempt at preventing child sexual abuse "reflects legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct."  <u>Broadrick v. Oklahoma</u>, 413 U.S. 601, 615 (1973).

Accordingly, we affirm appellant's conviction for using a computer to solicit a minor, in violation of Code § 18.2-374.3.

<u>Affirmed.</u>